MID–AMERICA GEORGIAN GARDENS, INC., et al., Appellants,

v.

MISSOURI HEALTH FACILITIES REVIEW COMMITTEE, Potosi Care Center and Potosi Manor, Respondents.

No. WD 50545.

Missouri Court of Appeals,
Western District.

Aug. 15, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1995.

Application to Transfer Denied
Nov. 21, 1995.

Harvey M. Tettlebaum, Jefferson City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Penney R. Rector, Asst. Atty. Gen., Jefferson City, for Missouri Health Facilities.

Lem T. Jones, Jr., Kansas City, Simon B. Buckner, IV, Jefferson City, for Potosi Care Ctr. and Potosi Manor.

Before FENNER, C.J., P.J., and BRECKENRIDGE and ELLIS, JJ.

FENNER, Chief Judge.

Mid–America Georgian Gardens, Inc., and Mid–America Georgian Gardens Nursing, L.P., appeal from the Order of the circuit court granting the summary judgment motions of the respondent Missouri Health Facilities Review Committee ("MHFRC"), and respondents Potosi Care Center, Inc., and Potosi Manor, Inc. (referred to in combination as "respondents Potosi"), on the basis that appellants lacked standing to bring their action for declaratory and injunctive relief. Appellants were challenging the actions of the MHFRC in consenting to a site change for a certificate of need procured by respondents Potosi to build a new skilled nursing facility in the City of Potosi, Washington County, Missouri.

The record reveals that on January 15, 1993, respondents Potosi submitted an application along with the required application fee to the MHFRC for a certificate of need to construct a 90 bed skilled nursing facility at a location described as 600 Angus in Potosi, Washington County, Missouri. The application was reviewed by the MHFRC staff, a need analysis was prepared by the Division of Aging, a public meeting was scheduled, notice of the meeting was published, and the meeting was held. At this meeting, appellants had the opportunity to express any concerns regarding the granting of a certificate of need to respondents Potosi. The need analysis included written certification by Bruce James on behalf of the Division of Aging that the occupancy rate of nursing facilities within a 15–mile radius of the proposed location, including Washington County, exceeded 90 percent. Appellants operated a skilled nursing facility within this 15–mile radius and opposed issuance of the certificate of need to respondents Potosi. The MHFRC voted to grant the certificate of need on March 29, 1993. There is no dispute that the issuance of this certificate of need was in compliance with all statutory requirements.

On or about September 3, 1993, respondents Potosi submitted to the MHFRC a request for a site change for the certificate of need approved on March 29, 1993. The new site is located near Washington County Hospital approximately one and one-half miles from the site originally proposed. This new site is also immediately southwest of the skilled nursing facility operated by appellants. The MHFRC did not require respondents to submit a new letter of intent, file a new application, or pay an additional filing fee. The affidavit of Thomas R. Piper, Director of the Certificate of Need Program which serves as the staff of the MHFRC, reveals that the MHFRC has never required an entity holding a certificate of need to complete the entire application process when requesting a site change only. A site change request was never considered tantamount to a new application.

The site change request was placed on the agenda of the MHFRC's October 6, 1993 regular meeting and appellants were provided an opportunity to comment on the requested site change at this meeting. Instead, appellants sought a temporary restraining order from the Circuit Court of Cole County to enjoin the MHFRC from acting on respondents' site change request. This petition was heard and denied by the court on October 5, 1993.

The MHFRC reviewed respondents' request on October 6, 1993, and voted to consent to the site change. Thereafter, appellants filed an Amended Petition for Declaratory and Injunctive Relief in Cole County Circuit Court on October 12, 1993, alleging that the MHFRC acted illegally in consenting to the site change request. Motions for summary judgment and suggestions in support were filed by both parties. The court sustained all of the respondents' motions for summary judgment and overruled appellants' corresponding motion on December 1, 1994. This appeal followed.

## I. STANDARD OF REVIEW

■ The Missouri Supreme Court provided an exhaustive analysis of summary judgment practice and review in its opinion in *ITT Commercial Fin. Corp. v. Mid–Am. Ma-*

*rine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). Appellate review of summary judgments is essentially *de novo. Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different than those which the trial court should have employed initially. *Id.* As the trial court's initial judgment is founded on the record submitted and the law, there is no need for the appellate court to defer to the trial court's granting of the summary judgment motion. *Id.* This is especially true in cases such as the one at bar where there is no real dispute as to any material fact; rather, the dispute revolves around the interpretation of the governing law.

## II. STANDING

■ Section 197.335, RSMo Supp.1993 provides for appeals of MHFRC decisions regarding the issuance of certificates of need:

[W]ithin thirty days of the decision of the committee, the applicant or the health systems agency within whose area the new institutional health service is to be offered may file an appeal....

The applicant or the area home health systems agency are the only entities with statutorily authorized standing to lodge an appeal of the MHFRC decision. Competitors, as appellants are in this case, lack standing to appeal an administrative decision to grant a certificate of need under section 197.355. *See Community Care Centers, Inc. v. Missouri Health Facilities Review Comm.*, 735 S.W.2d 13 (Mo.App.1987).

On appeal in this cause, appellants contend that the MHFRC committed an illegal act by consenting to the site change, thereby conferring standing to file suit to appellants based on their status as taxpayers. The recent decision of this court in *Finley v. Missouri Health Facilities Review Comm.*, 904 S.W.2d 1, 1995 Mo.App. LEXIS 913 (Mo. App. 1995) reaffirmed the standards for establishing taxpayer standing set forth by the Missouri Supreme Court in *Eastern Missouri Laborers Dist. Council v. St. Louis County*, 781 S.W.2d 43 (Mo. banc 1989). "Absent fraud or other compelling circumstances, in order to have standing as a taxpayer, the taxpayer must be able to demon-

strate that the transaction at issue effects a direct expenditure of funds generated through taxation or an increased tax levy, or a pecuniary loss attributable to the challenged transaction."[1] *Finley,* 904 S.W.2d at 3. The standing for a taxpayer to sue is not to enable a private redress, but to benefit the public. *Health Servs. Management, Inc. v. Missouri Health Facilities Review Comm.,* 791 S.W.2d 732 (Mo.App.1990) (citations omitted). The private injury that invests standing to a taxpayer is not a purely personal grievance in which other taxpayers have no interests, but an injury shared by the public at large. *Id.*

Appellants provide two arguments for their proposition that they have taxpayer standing to challenge the MHFRC action: (1) there was a direct expenditure of state funds by the MHFRC in the form of staff salaries and hearing costs utilized to perform the "illegal act" of consenting to the site change requested by respondents Potosi; and (2) public funds will be expended by the State of Missouri in paying respondents Potosi for any and all Medicaid residents they may serve as a result of being allowed to construct the facility at the new site. These arguments are identical to those set forth by the appellants in the *Finley* case. We found that the *Finley* appellants lacked standing to appeal the MHFRC's action and we are not inclined to find otherwise in this case.

■ First, with regard to the fact that state funds were utilized to pay MHFRC employees and to hold the MHFRC hearings and committee meetings, these are not the type of expenditures of public funds that confer taxpayer standing. *Finley,* at 3, 1995 Mo.App. LEXIS 913. They are general operating expenses which are incurred regardless of the decision made by the MHFRC in the particular case. The specific MHFRC action herein did not impact the direct expenditure of public funds in the manner sufficient to establish taxpayer standing.

The primary cases relied upon by appellants in arguing that the expenditure of pub-

lic funds conferred standing in the case at bar are clearly distinguishable from the situation before this court. In *Harris v. Missouri Gaming Comm'n,* 869 S.W.2d 58 (Mo. banc 1994), the plaintiff was challenging the constitutionality of legislation relating to the regulation of gaming activities. Taxpayer standing was conferred based on expenditure of state funds *pursuant to the challenged act.* In the case at bar, there is no allegation that the legislation or statute establishing the MHFRC and governing the certificate of need process is unconstitutional or illegal in any way, thereby causing the illegal expenditure of state funds. The rationale of *Harris* is inapplicable to the case at bar, where appellants allege the MHFRC's decision, not the statutory authority, is illegal.

In *Duvall v. Coordinating Bd. for Higher Educ.,* 873 S.W.2d 856 (Mo.App.1994), a taxpayer challenging the legality of certain rules and procedures implemented by the defendant Board was found to have standing. *Duvall* involved a challenge to the legality of a procedural process or rule, adherence to which caused the expenditure of state funds. Again, in the case at bar, there is no challenge to the legality of the actual process of having the MHFRC hearings and meetings. Appellants are challenging a decision of the MHFRC that they do not like. The *Duvall* rationale is inapplicable to this case. Appellants simply cannot show a direct expenditure of state funds as a result of the MHFRC decision appellants challenge.

■ Appellants' second and final argument with regard to standing is that because respondents Potosi have declared their intention to seek Medicaid certification and projected over $1.5 million in Medicaid reimbursements for the year 1997, appellants are conferred taxpayer standing based on the fact that Medicaid monies are a combination of state and federal funds, with the state funds being derived from taxation. This argument is wholly without merit.

First, the MHFRC has no control over Medicaid claims that *might* be paid to respondents Potosi *at some point in the future.*

---

1. Appellants make much of the fact that the quoted language from *Finley* paraphrases the actual language of the *Eastern Missouri Laborers.* They contend that the phrase "that the transaction at issue effects" adds a new requirement to

the *Eastern Missouri Laborers* test where this language was not present. This is not the case. The *Eastern Missouri Laborers* test was followed, not modified, by our opinion in *Finley.*

Respondents Potosi must first apply for Medicaid certification, provide covered services, and then collect for these services. The MHFRC does not control whether respondents Potosi will ever receive Medicaid reimbursements and their decision to consent to the site change in no way creates the expenditure of state funds in the form of Medicaid payments. Even if respondents Potosi already possessed Medicaid certification, appellants do not represent that any Medicaid payments potentially received by respondents Potosi are the result of the MHFRC action consenting to the site change. People who are eligible for Medicaid will receive Medicaid assistance whether they receive that care from respondents Potosi or any other Medicaid certified care center. *See Finley* at 3, 1995 Mo.App. LEXIS 913. Regardless of the facility, Medicaid will provide reimbursement. The decision of the MHFRC has no impact on the expenditure of Medicaid funds.

Much like *Finley,* the record reflects that appellants' complaint is merely a personal grievance, not a complaint of injury shared by the public at large.[2] Appellants have failed to establish that they have standing to appeal the decision of the MHFRC consenting to the site change for the certificate of need issued to respondents Potosi. As appellants do not have standing to challenge the MHFRC decision, we need not consider the remaining issues on appeal.

The order of the circuit court granting summary judgment to the Missouri Health Facilities Review Committee, Potosi Care Center, Inc., and Potosi Manor, Inc., is affirmed.

All concur.

---

2. Appellants contend that if entities in their position do not have standing to challenge the action of the MHFRC in consenting to the site change for the certificate of need issued to respondents Potosi, the certificate of need process will be abused by parties initially seeking a certificate for a remote area of the state and then requesting a site change to an urban area, where there has not been an appropriate certificate of need analysis performed. This contention assumes that the MHFRC will consent to *every* site change request and is based upon a scenario other than that presented in the case at bar. Obviously, the situation described by appellants can be avoided by the MHFRC refusing to consent to such a drastic site change for the certificate of need in question.