W. Todd AKIN, et al. Appellants,

v.

MISSOURI GAMING COMMISSION, et al., Respondents.

No. 79594.

Supreme Court of Missouri, En Banc.

Nov. 25, 1997.

Rehearing Denied Dec. 23, 1997.

.Simon B. Buckner, Buckner & Buckner, P.C., Jefferson City, for Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Erwin O. Switzer, III, Barbara Holway, Barbara H. Frazier, Asst. Attys. Gen., Jefferson City, Howard Paperner, Robert L. Devoto, Thomas F. Eagelton, Lawrence C. Friedman, Matthew J. Fairless, Byron Francis, St. Louis, Kenneth D. Dean, Columbia, Leonard Rose, Kansas City, for Respondent.

BENTON, Chief Justice.

In August 1996, the Missouri Gaming Commission was considering applications to license floating facilities in St. Louis County. Three Missouri taxpayers sued to prevent the licensing of facilities in artificial spaces filled with water from the Missouri River, not contiguous to the river but within 1,000 feet of the main channel. The Missouri Riverboat Gaming Association, the City of Maryland Heights, and three gaming corporations (including applicants Harrah's Maryland Heights Corporation and Players MH, L.P.) intervened. The circuit court, upholding the validity of a statute, dismissed the petition, and the taxpayers appeal. *Mo. Const. art. V, sec. 3.* Reversed and remanded.

I.

Initially, the taxpayers claim that the circuit court erred in dismissing the petition, because they are entitled to a declaration of rights under the Declaratory Judgment Act, *chapter 527 RSMo.*[1] In fact, the trial court issued a thirteen-page Memorandum, Order and Judgment, which declared their rights.

◼ The taxpayers also contend that the General Assembly lacked power to pass a bill implementing the constitutional amendment until the People approved it. This contention was not raised in the trial court, and thus will not be addressed by this Court. *Artman v. State Board of Registration,* 918 S.W.2d 247, 253 (Mo. banc 1996).

---

1. All statutory references are to RSMo 1994.

## II.

On November 8, 1994, the People of Missouri adopted a constitutional amendment, which included a new Article III, section 39(e):

> **Section 39(e). Riverboat gambling on Mississippi and Missouri rivers—authority for certain activities.**—The general assembly is authorized to permit only upon the Mississippi River and the Missouri River lotteries, gift enterprises and games of chance to be conducted on excursion gambling boats and floating facilities.

*1994 Mo Laws 1249.* The ballot title, placed before each of the 1,751,459 voters, asked:

> Shall the General Assembly be authorized to permit only upon the Mississippi River and the Missouri River lotteries, gift enterprises, and games of chance to be conducted on excursion gambling boats and floating facilities? This proposal would increase state revenues from existing gaming boats approximately $30,000,000 per year. Impact on local governments is unknown.

*Id.* By their affirmative vote on the constitutional amendment, Missourians authorized games of chance "only upon the Mississippi River and the Missouri River."

■ The meaning of this phrase is the key to this case. "In determining the meaning of a constitutional provision the court must first undertake to ascribe to the words the meaning which the people understood them to have when the provision was adopted." *Boone County Court v. State,* 631 S.W.2d 321, 324 (Mo. banc 1982). This common understanding of language reflects the common sense of the People, as

> every word employed in the constitution is to be expounded in its plain, obvious, and common-sense meaning, unless the context furnishes some ground to control, qualify, or enlarge it. Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings.

*State ex inf. Dalton v. Dearing,* 364 Mo. 475, 263 S.W.2d 381, 385 (1954) *quoting* 1 Story, *Constitution, sec.* 451. This ordinary and usual meaning normally appears in the dictionary. *Zahner v. City of Perryville,* 813 S.W.2d 855, 858 (Mo. banc 1991).

The word "only" means "exclusively, solely." *Webster's Third New International Dictionary* 1577 (1976). "Upon" means "on," which is "used as a function word to indicate position over and in contact with that which supports from beneath." *Id.* at 2517, 1574. The term "river" means "a natural surface stream of water of considerable volume and permanent or seasonal flow." *Id.* at 1962.

■ By approving the 1994 constitutional amendment, the People intended that games of chance be conducted on facilities that are solely over and in contact with the surface of the Mississippi and Missouri Rivers. Land-based casino gambling remains unconstitutional under Article 39(9) of the Missouri Constitution. *See Harris v. Missouri Gaming Commission,* 869 S.W.2d 58, 60 (Mo. banc 1994). The only gambling legalized by the 1994 amendment is river-based on excursion gambling boats and floating facilities.

The defendants seek to qualify this river/land distinction, invoking a statute enacted before the constitutional amendment. *See 1994 Mo. Laws 821.* In section 313.800.1(16) RSMo, the General Assembly defined the "Mississippi River" and "Missouri River" as:

> the water, bed and banks of those rivers, including any space filled by the water of those rivers for docking purposes in a manner approved by the commission but shall not include any artificial space created after May 20, 1994, and is located more than one thousand feet from the closest edge of the main channel of the river as established by the United States Army Corps of Engineers.

The defendants contend the People were aware of this law, and adopted its definition of "Mississippi River" and "Missouri River" when approving the constitutional amendment six months after the legislature enacted section 313.800.1(16).

The words of the constitutional amendment contradict this contention. The People legalized only river-based games of chance. The "artificial space" described in section 313.800.1(16) may or may not be river-based. To the extent section 313.800.1(16) conflicts with the Constitution, it is invalid. *See State ex rel. State ex rel. Upchurch v. Blunt*, 810 S.W.2d 515, 516 (Mo. banc 1991).

The defendants cite past decisions of this Court to support the argument that the People adopted the legislature's definition of the Mississippi and Missouri Rivers. In each of these cases, the constitutional provision was ambiguous, and this Court used a statute to aid interpretation. *See In re V*, 306 S.W.2d 461, 465 (Mo. banc 1957); *Rathjen v. Reorganized School District R–II*, 365 Mo. 518, 284 S.W.2d 516, 525–26 (1955); *State ex rel. O'Connor v. Riedel et al.*, 329 Mo. 616, 46 S.W.2d 131, 134 (1932); *State ex rel. Heimberger v. Board of Curators of University of Missouri*, 268 Mo. 598, 188 S.W. 128, 130 (1916); *cf. Folk v. City of St. Louis*, 250 Mo. 116, 157 S.W. 71, 76 (1913).

■ "While it is true that weight should be given to official legislative and executive acts, and while it has been written that such official acts are 'very persuasive on the courts,' yet such weight is accorded and such practical construction held persuasive only when the section in question is ambiguous and its meaning doubtful." *State ex rel. Randolph County v. Walden*, 357 Mo. 167, 206 S.W.2d 979, 984 (1947). If the meaning of the Constitution is clear, "no act of the General Assembly could in any wise add to it, detract from it, transfer it, infringe upon it or vary it." *Id.*

■ The Gaming Commission argues that there is no requirement that a word be ambiguous before the General Assembly can define it, citing *St. Louis Country Club v. Administrative Hearing Commission*, 657 S.W.2d 614, 617 (Mo. banc 1983) and *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992). While this may be generally true, the legislature has no authority to vary the meaning of unambiguous terms in the Constitution. *Walden*, 206 S.W.2d at 984. Equally, the various definitions in federal laws of the Mississippi and Missouri Rivers are irrelevant to the meaning of words in the Missouri Constitution.

Defendants also propose that the phrase "only upon the Mississippi River and the Missouri River" has the limited purpose to prohibit gambling on other rivers in Missouri. The amendment certainly includes this prohibition, but the term "upon" further requires that the gambling boats and floating facilities be "over and in contact with" the Mississippi and Missouri Rivers.

The Gaming Association stresses a different dictionary definition of "on" as:

> location closely adjoining something <a town situated *on* the river> or location very near some point of a narrowly extended area (as a street) <lives *on* the principal street of the town>

*Webster's* at 1574. This definition is part of a more general definition that "on" is: "used as a function word to indicate contiguity or dependence." *Id.* "Contiguity" means "the state of being contiguous," which is "touching along boundaries often for considerable distances." *Id.* at 492. The sub-definition cited by the Association does not have a different meaning than the general definition of "on," because a facility is "over and in contact with" the river if it is in an artificial space, filled with river water, that touches the surface stream (for considerable distances). Compare *Spradlin v. City of Fulton*, 924 S.W.2d 259, 262–63 (Mo. banc 1996).

In sum, the 1994 constitutional amendment authorizes games of chance to be conducted on excursion gambling boats and floating facilities solely over and in contact with the surface of the Mississippi and Missouri Rivers. Such gambling may occur in artificial spaces that are contiguous to the surface stream (and thus river-based), but not in other artificial spaces that are not contiguous to the surface stream of the river (that are land-based). The mere presence of river water in artificial spaces within 1,000 feet of the channel does not make the gambling "only upon the Mississippi River and the Missouri River."

## III.

Finally, the Gaming Association requests that this Court declare any ruling prospective only. Since this suit was filed before licenses were issued to Harrahs and Players, they do not meet the threshold for prospective only application because they cannot "reasonably and in good faith" rely upon section 313.800.1(16). *State ex rel. Cardinal Glennon Memorial Hospital For Children v. Gaertner*, 583 S.W.2d 107, 118 (Mo. banc 1979).

## IV.

As this case was dismissed before the introduction of evidence at trial, the cause is reversed and remanded for proceedings consistent with this opinion.

All concur.