Matthew TURNER, Shawn Turner, Dave Parker, Sharon Parker, Christine Sevage, Thomas Noffsinger, and Sandra Colyer, Appellants/Respondents,

v.

CITY OF INDEPENDENCE, Respondent/Appellant.

Nos. WD 64998, WD 65048.

Missouri Court of Appeals, Western District.

Jan. 24, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 2006.

Application for Transfer Denied April 11, 2006.

Mark Epstein, Kansas City, for Appellant.

Paul Campo, Lee's Summit, Ronald Shortlidge, Overland Park, KS, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

After Independence's city council enacted ordinances to rezone two large tracts in the city's Little Blue Valley area from agricultural use to residential planned unit development, area property owners filed this declaratory judgment action. They asked the circuit court to declare that the city council had acted arbitrarily and capriciously in enacting the rezoning ordinances. The circuit court declared that the city council had acted lawfully, and the property owners appeal. We affirm the circuit court's judgment.

This dispute arose when, during 2003, Independence's council enacted ordinances to rezone the tracts in the Little Blue Valley at the request of Arcadia Communities, LLC. Arcadia wanted to develop the tracts into two "traditional neighborhood design" projects, dubbed Crenshaw and Village One. Traditional neighborhood design projects are housing developments built to resemble neighborhoods and typically include a neighborhood center around which mixed income housing is constructed. Crenshaw involved a 169–acre tract on which Arcadia planned to build 240 dwelling units. Village One was to be a 233–acre tract on which Arcadia would build 599 dwelling units. The City Council authorized rezoning the land from agricultural to R–1a–PUD (single family residential planned unit development). Before enacting the ordinances, the City Council held two hearings. Independence's City Planning Commission had held two hearings before recommending that the City Council approve the projects.

Area property owners Matthew and Shawn Turner, Dave and Sharon Parker, Christine Sevage, Thomas Noffsinger, and Sandra Colyer filed this declaratory judgment action, seeking the circuit court's declaration that the ordinances were "arbitrary, capricious, and unreasonable" and "illegal, unconstitutional, null and void." They also sought to enjoin Independence from passing zoning ordinances and from approving further development plans regarding Crenshaw and Village One. After a bench trial, the circuit court entered judgment for Independence. The property owners appealed, and Independence cross-appealed.

The circuit court issued findings of fact and conclusions of law. In reviewing its judgment, we defer to its findings of fact by reviewing them to ascertain only that they are supported by substantial and competent evidence. *Roorda v. City of Arnold*, 142 S.W.3d 786, 789 (Mo.App. 2004). We do not defer to its conclusions of law but make our own independent determinations concerning them. *Marshall v. Pyramid Development Corporation*, 855 S.W.2d 403, 406 (Mo.App.1993).

We first consider Independence's cross-appeal in which it challenges appellants' standing to challenge the ordinance that rezoned a tract for the proposed Crenshaw development. Independence argues that the appellants were not aggrieved by the

ordinance because Crenshaw will not cause special injury to them.

■ Before the *circuit court could assume* jurisdiction of the appellants' action, the appellants had to establish that they had standing. *Dodson v. City of Wentzville*, 133 S.W.3d 528, 533 (Mo.App.2004). To show standing in a zoning decision, a plaintiff must establish either that a statute confers him or her with standing or that the decision adversely affects more distinctly and directly his or her interest than it affects the general public's interest. *State ex rel. Westside Development Company, Inc. v. Weatherby Lake*, 935 S.W.2d 634, 637 (Mo.App.1996). An interest adversely affected still affords standing even if it is attenuated, slight, or remote. *Ste. Genevieve School District R–II v. Board of Alderman of the City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002) (citations omitted). If a zoning decision affects or will affect the plaintiff's property interest adversely, the plaintiff has the requisite interest in the controversy. *Allen v. Coffel*, 488 S.W.2d 671, 674 (Mo.App.1972). "An adjoining, confronting or nearby property owner has standing, without further proof of special damage, to assert the right for review of an administrative decision affecting the property in question." *Citizens for Safe Waste Management v. St. Louis County*, 810 S.W.2d 635, 639 (Mo. App.1991).

■ No statute conferred appellants with an interest, so, to establish standing, they had to show that they will be directly and adversely affected by the rezoning for the Crenshaw development. Appellants alleged that the development would create numerous problems for them, including dangerous traffic conditions on the narrow roads abutting their properties. Considering that traffic from Crenshaw property would empty onto the narrow roads abutting appellants' properties and that appellants alleged the traffic would create congested and dangerous conditions, Crenshaw stands to impact appellants adversely and more distinctly than the community in general. This was sufficient to establish standing. Although appellants' properties do not directly abut the Crenshaw property, this is not required to satisfy the standing requirement. *Id.*

■ Turning to appellants' arguments, they first assert that the circuit court erred by not allowing appellants Turner, Noffsinger, Parker and Sevage to testify regarding the market value and diminution in value of their properties. Appellants mischaracterize what happened. The circuit court did allow appellants to testify of their properties' values, but it sustained Independence's objection to their opining about the impact of Arcadia's projects on their properties' values. Appellants, however, did not make an offer of proof for the testimony of Turner, Noffsinger, and Parker. Even assuming *arguendo* that the circuit court erred, this error is not preserved for our review. " 'Nothing is preserved for appellate review when a court rejects evidence, in the absence of an offer of proof.' " *Tile–Craft Products Company, Inc. v. Colonial Properties, Inc.*, 498 S.W.2d 547, 549 (Mo.1973) (*quoting Hays v. Western Auto Supply Company*, 405 S.W.2d 877, 881 (Mo.1966)).

■ Appellants did make an offer of proof of Sevage's testimony, but we cannot determine whether or not the circuit court erred in prohibiting Sevage's opinion because her offer of proof was insufficient to preserve the issue for our review. It was not specific or definite:

> Q. . . . Ms. Sevage, if allowed to testify about your property value, your specific property that you have purchased, what would your opinion be on the impact of

the property values because of these projects?

A. My opinion would be they would decrease, but there are other types of impacts as well besides property values.

As this court said in *Terry v. Mossie*, 59 S.W.3d 611, 612 (Mo.App.2001), "an appellate court will not review evidence excluded by the [circuit] court unless a specific and definite offer of proof was made at trial ... show[ing] ...:(1) what the evidence will be; (2) the purpose and object of the evidence; and (3) each fact essential to establishing the admissibility of the evidence." Sevage's opining merely that her property's value would decrease by some unstated amount is not specific or definite.

■ The appellants next argue that the circuit court erred in deferring to the zoning officer's calculation of the developments' holding capacities. Appellants complain that Bruce Hahl, Independence's planner, used a gross density calculation to determine the developments' holding capacities although the comprehensive plan for the Little Blue Valley required use of net density and although three subdivisions close to Arcadia's proposed developments were low-density. Concerning calculation of the developments' holding capacities, the circuit court made these findings of fact:

90. On July 19, 1993, the City Council passed Resolution No. 3913, adopting the Comprehensive Plan.

91. On May 17, 1999, the City Council passed Resolution No. 4600, adopting the Little Blue Valley Comprehensive Plan Amendment: An Economic Development Strategy for Eastern Independence (the "LBVCPA").

92. Bruce Hahl is the person charged with administering the LBVCPA[,] and he views the role of the plan as a guide and that as conditions warrant, regardless of the time frame,

the plan and policies will be updated and changed accordingly.

. . . .

96. Related to the holding capacity analysis contained in the LBVCPA, a former City planning staff member typed a memo in an attempt to implement the LBVCPA's net density formula. However, Bruce Hahl, as director of the Community Development Department, directed his staff that net density not be used as the method of calculation when it comes to residential projects, but instead to use gross density. In his 37 years as a professional land planner, Mr. Hahl has consistently used gross density as the method of calculation when it comes to residential projects. Mr. Hahl further testified that it would not make sense to use a net density formula when dealing with PUDs to calculate the density because such a formula is inherently inconsistent with one of the purposes of PUDs, namely relief from compliance with conventional zoning ordinance site and design requirements in exchange for more open space and preservation of natural features and environmentally sensitive areas.

97. The Village One development is consistent with the LBVCPA and the Comprehensive Plan as a whole.

98. The Crenshaw development is consistent with the LBVCPA and the Comprehensive Plan as a whole.

The appellants are correct that the circuit court erred in assuming that Hahl's rejection of the comprehensive plan's method for calculating holding capacities on the ground that the method did not "make sense" was improper.

■ Independence's council approved the comprehensive plan and the Little Blue Valley amendment by means of resolutions. Although a resolution is not law

in the sense of an ordinance, it is an expression of the council's intent. *Julian v. Mayor, Councilmen and Citizens of City of Liberty,* 391 S.W.2d 864, 866–67 (Mo.1965). Independence's council declared in its resolutions that it intended for city administrators to follow the comprehensive plan, "The Comprehensive Plan, as contained in this document, is reflective of the City's policy at the present time."

The circuit court found, based on Hahl's testimony, that Hahl "views the role of the plan as a guide and that as conditions warrant, regardless of the time frame, the plan and policies will be updated and changed accordingly." We assume that, by explaining what Hahl's views were, the circuit court was adopting them as correct, although it failed to do so.[1] Nonetheless, Hahl's views were only partially correct: He was correct in his view that the City Council intended for the comprehensive plan, including the Little Blue Valley amendment, to serve as a guide and that the plan was to be updated and changed as conditions and new policies warranted. The plan said:

It is the City Planning Commission's intent that as conditions change, the appropriate portions of the plan document can be updated and replaced with new text, maps and graphics. This also recognizes that policies carefully formulated at one point in time will need to be changed as social and economic conditions are altered, or as community values change. An acceptable and desirable policy which existed at one point in history may be entirely unworkable at another time in the future. By the same token, a policy that may have been unacceptable at one point may now be very

appropriate for the City to implement. The plan contained in this document is therefore designed to serve the City of Independence now and for the foreseeable future, with the expressed understanding that as conditions warrent [sic], regardless of the time frame, the plan and policies will be changed accordingly.

But, contrary to Hahl's views, any changes in policy as expressed in the comprehensive plan had to be accomplished by official action by sanctioned bodies—not by Hahl's unilateral decision to alter the policy according to what made sense to him.

We find nothing in the record indicating that Independence's council had altered its intent as expressed in the comprehensive plan. Hahl's unilateral decision to calculate holding capacities by using gross density rather than net density as set out in the comprehensive plan appears to have been a usurpation, based on his own sense of what was proper.

Independence defends Hahl's action by arguing that an official charged with administering a development plan is entitled to deference in his or her interpretation of the plan. We concur with the principle. *Longview of St. Joseph, Inc. v. City of St. Joseph,* 918 S.W.2d 364, 371 (Mo.App. 1996). But Hahl was doing more than interpreting the City Council's expression of intent in its comprehensive plan. He seemed to be ignoring it in favor of a contrary policy. If our perception is accurate, his acts were an unlawful usurpation.

But even if Hahl's acts were an unlawful usurpation, it was of no significance in the outcome of this case. Had Hahl calculated holding capacity according to the formula set out in the comprehensive plan for the Little Blue Valley, Arcadia's developments

---

1. A finding that declares what a party's views are is a far cry from the circuit court's finding that the views are correct. *Loepke v. Opies Transport, Inc.,* 945 S.W.2d 655, 661 (Mo. App.1997), *overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo.App.2003).

would have fit within the categories designated by the City Council for the projects: "low residential" for Crenshaw and "low/medium residential" for Village One. Because the projects fit within the comprehensive plan's designations, Hahl's calling attention to the other nearby low density subdivisions would not have made a difference either.

In calculating holding capacity, Hahl used what he termed gross density: He simply divided the number of dwelling units as set out in the projects' plans into the developments' total acreage. Arcadia planned to build 599 dwelling units on the 233–acre tract. Hahl concluded that Village One's density was 2.6 dwelling units per acre. The comprehensive plan for Little Blue Valley defined a low/medium residential project, such as Village One, as having a holding capacity of three to seven dwelling units per acre; hence, the appellants argue, Hahl's density figures were misleading.

But the circuit court should have properly presumed that the City Council was aware of the comprehensive plan for Little Blue Valley with its definition of a "low/medium residential" development. The council had adopted it only four years before holding hearings on Arcadia's proposals. Arcadia planned to build 599 units in Village One, which the city council authorized as a low/medium residential project, even though the comprehensive plan for Little Blue Valley would have allowed up to 1305 units. Arcadia's project was only 46 percent of the size that the plan authorized. We fail to comprehend how the appellants were harmed by Hahl's apparent usurpation.

Moreover, the appellants' argument seems disingenuous. They bastardize the same formula that they vehemently insist the circuit court and the City Council were obligated to follow. Rather than use the formula set out in the comprehensive plan for Little Blue Valley, the appellants created their own. They incorrectly averred that the correct net density formula called for subtracting from the gross acreage every bit of land not actually used for housing. Because of the unusually large amount of "green space" planned for Village One, slightly less than 100 acres of the 233–acre tract was to have a dwelling unit on it. The appellants averred that the 599 units planned for Village One should be divided into the 100 acres, giving a density of six units per acre. This formula is not the calculation called for in the plan and was as improper as Hahl's method of which the appellants complain. Concerning calculation of holding capacity, the plan declared, "For residential categories, net developable land was assumed to be 80% of the total vacant acres available. For example, if 4,500 gross acres are available for medium density housing, the net acreage will be 4,500 acres $\times$ 0.80 = 3,600 acres." Because the gross acreage for Village One was 233 acres, the plan assumed that 186.4 acres were available for development. Because Independence's council authorized a low/medium residential development, the plan provided for the building of as many as seven dwelling units per acre, or a total of 1304.8 units.

■ Appellants argue in their final point that, overall, Independence's zoning decisions were unreasonable. Zoning decisions must be reasonable, but, because they are legislative acts, the circuit court was obligated to presume that Independence's zoning decisions were valid and to resolve uncertainty about their reasonableness in the city's favor. *Vatterott v. City of Florissant,* 462 S.W.2d 711, 713 (Mo. 1971). The only proper basis for the circuit court's declaring the zoning decisions to be unreasonable was that they bore no substantial relationship to public health,

safety, morals, or general welfare. *Heidrich v. City of Lee's Summit,* 916 S.W.2d 242, 248 (Mo.App.1996). But, even when the zoning legislation bears a substantial relationship to public health, safety, morals, or general welfare, we have declared that the legislation can be unreasonable if private detriment to surrounding property owners is significantly greater than public benefit. *Id.* at 248–49. Moreover, we have declared, "[T]here can arguably be no private detriment in the absence of a demonstrated negative impact on property value." *Elam v. City of St. Ann,* 784 S.W.2d 330, 336 (Mo.App.1990).

Appellants did not carry their burden of overcoming the presumption that the circuit court's decision was correct in declaring the City Council's rezoning decisions to be reasonable. Several non-rural residential subdivisions were near the proposed developments, including several with densities of less than one dwelling unit per acre. As the circuit court found, the Crenshaw and Village One projects as approved by the City Council conformed to the character of the surrounding neighborhoods and to the Little Blue Valley comprehensive plan by satisfying 44 of the plan's 53 goals. Hahl and Tom Riederer, President of the Independence Council for Economic Development, testified that the projects were important to Independence's positive economic development. Although appellants presented evidence of private detriment, sufficient evidence supported the circuit court's conclusion that public benefit significantly outweighed the detriment.

We, therefore, affirm the circuit court's decision.

VICTOR HOWARD and RONALD R. HOLLIGER, Judges, concur.