**COLUMBIA SUSSEX CORPORATION,**
Wimar Tahoe Corporation, William J.
Yung and Fred Dehner, Appellants,

v.

**MISSOURI GAMING COMMISSION,**
Casino One Corporation, and City
of St. Louis, Respondents.

No. WD 65467.

Missouri Court of Appeals,
Western District.

April 25, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 30, 2006.

Application for Transfer Denied
Aug. 22, 2006.

Simon P. Tonkin, St. Louis, MO, Dale C. Doerhoff, Co–Counsel, Jefferson City, MO, for appellants.

Michael W. Bradley, Assistant Attorney General, Jane Rackers, Co–Counsel, Jefferson City, MO, for respondent Gaming Commission.

Jerome D. Riffel, James Maloney, Co–Counsel, Kansas City, MO, for respondent Casino One Corporation.

Jane Ellen Dueker, Donald G. Dylewski, St. Louis, MO, for respondent City of St. Louis.

Before JOSEPH M. ELLIS, Presiding Judge, PAUL M. SPINDEN, Judge, and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

The Columbia Sussex Corporation, the Wimar Tahoe Corporation, William Yung, and Fred Dehner ("Appellants") appeal from a judgment entered in the Circuit Court of Cole County dismissing an action filed by Appellants related to a decision issued by the Missouri Gaming Commission approving the location of an excursion gambling facility proposed by Casino One Corporation.

As part of its quest to build and operate a casino on a piece of property north of Laclede's Landing in St. Louis, Missouri, Casino One applied to the Missouri Gaming Commission for approval of the site of the gambling facility, approval of historical design elements of the proposed facility, and approval of continuous docking of the facility. On November 19, 2004, the Gaming Commission conducted a public hearing regarding Casino One's requests.

On January 12, 2005, the Gaming Commission issued its Findings of Fact and Conclusions of Law finding that the pro-

posed location for the gambling facility complied with Missouri law and approving the proposed site. The Gaming Commission also approved the continuous docking request and the plans for the external design.

That same day, Appellants filed a three-count petition in the Circuit Court of Cole County. In the first count, Appellants sought *de novo* review of the Gaming Commission's decision approving the casino site. In the second count, Appellants sought a declaratory judgment declaring that a gambling facility at the proposed site would be in violation of Article III, § 39(e) of the Missouri Constitution. In the final count, Appellants requested a writ of prohibition against the Gaming Commission prohibiting the Gaming Commission from licensing a casino at the proposed site.

On March 3, 2005, the Gaming Commission filed a motion to dismiss Appellants' petition, asserting that they lacked standing to challenge the Gaming Commission's decision. The Gaming Commission further asserted that jurisdiction over any appeal from its decision was vested exclusively in this court pursuant to § 313.840.2. Casino One subsequently filed a motion requesting dismissal for these same reasons.

Following a hearing on the motions, the circuit court entered its judgment finding that it lacked subject matter jurisdiction over the matter because jurisdiction over the Commission's decision was vested in the Court of Appeals for the Western District of Missouri under § 313.840.2.

Appellants bring two points on appeal. In their first point, Appellants claim that § 313.840.2 is inapplicable to their challenge to the proposed casino site. Appellants' second point asserts that the trial court erred in dismissing their counts requesting declaratory judgment and a writ of prohibition. Appellants contend that § 313.840.2 had no application to such actions. In response, in addition to challenging Appellants' interpretation of § 313.840.2, Respondents contend that Appellants lacked standing to bring their action and that the petition should have been dismissed on that basis.

We first address Appellants' standing to directly challenge the Commission's decision. "Standing is a jurisdictional matter antecedent to the right to relief." *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002). " 'Without [standing], a court has no power to grant the relief requested.' " *Querry v. State Highway & Transp. Comm'n*, 60 S.W.3d 630, 634 (Mo.App. W.D.2001) (quoting *In re Estate of Scott*, 913 S.W.2d 104, 105 (Mo.App. E.D.1995)).

"[Standing] asks whether the persons seeking relief have the right to do so." *Farmer*, 89 S.W.3d at 451. " 'Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated[.]' " *F.W. Disposal S., LLC v. St. Louis County*, 168 S.W.3d 607, 611 (Mo. App. E.D.2005) (quoting *Ste. Genevieve Sch. Dist. R–II v. Bd. of Aldermen*, 66 S.W.3d 6, 10 (Mo. banc 2002)). "Where, as here, a question is raised about a party's standing, courts have a duty to determine the question of their jurisdiction before reaching substantive issues, for if a party lacks standing, the court must dismiss the case because it does not have jurisdiction of the substantive issues presented." *Farmer*, 89 S.W.3d at 451.

"[A]ppellate review of whether a party has standing to sue is conducted *de novo*." *Executive Bd. of Mo. Baptist Convention v. Carnahan*, 170 S.W.3d 437, 445 (Mo.App. W.D.2005). "This court determines standing as a matter of law on the basis of the petition along with any other

non-contested facts accepted as true by the parties at the time the motion to dismiss was argued." *Sherwood Nat'l Educ. Ass'n v. Sherwood–Cass R–VIII Sch. Dist.*, 168 S.W.3d 456, 463 (Mo.App. W.D.2005) (internal quotations omitted).

While the parties dispute whether the proceedings before the Commission constituted a contested or a non-contested case, we conclude that in either event, Appellants lack standing.

■ "Section 536.100 provides that any person who has exhausted all administrative remedies and who is aggrieved by a final decision in a contested case, shall be entitled to judicial review as provided in §§ 536.100 to 536.140." *City of Eureka v. Litz*, 658 S.W.2d 519, 522 (Mo.App. E.D. 1983). "To qualify as aggrieved persons, plaintiffs must demonstrate a specific and legally cognizable interest in the subject matter of the administrative decision and that the decision will have a direct and substantial impact on that interest." *Id.* "The decision must operate prejudicially and directly upon plaintiffs' personal or property rights or interest and such must be immediate and not merely a possible remote consequence." *Id.*

■ "Section 536.150 allows judicial review of an agency decision in a noncontested case when the agency decision determines the 'legal rights, duties or privileges of any person,' in other words, a decision involving individual rights and interests." *State ex rel. Stewart v. Civil Serv. Comm'n of City of St. Louis*, 120 S.W.3d 279, 284 (Mo.App. E.D.2003). "For a party to have standing for review under § 536.150, the agency action must directly affect the private rights of the person seeking judicial review." *Querry*, 60 S.W.3d at 636; *see also Stewart*, 120 S.W.3d at 284.

■ "Whether a particular person has status to contest [an] administrative action is a question of law." *Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 276 (Mo.App. W.D.2000). "Not every person who files a protest and is given an opportunity to be heard by an administrative agency has a right to appeal from the decision of the agency[.]" *Id.* "Whether a person has standing to seek judicial review of [an administrative] decision is a question of law that depends upon a number of factors, including the nature and extent of the person's interest in the subject matter, the character of the administrative action, and the terms of the statute that created the right or the method of review." *Stewart*, 120 S.W.3d at 284.

■ Appellants contend that because the Wimar Tahoe Corporation owns a piece of property within one thousand feet of the proposed gambling facility, Wimar Tahoe has standing to challenge the Gaming Commission's decision as a nearby landowner. Appellants rely upon *Citizens for Safe Waste Management v. St. Louis County*, 810 S.W.2d 635 (Mo.App. E.D. 1991), for the proposition that a nearby landowner has standing. However, that case held that "[i]n order to gain standing to challenge an administrative zoning decision, plaintiffs must demonstrate a specific and legally cognizable interest in the subject matter of the decision *and show that the decision will have a direct and substantial impact on plaintiffs' personal or property rights or interests.*" *Citizens for Safe Waste Management*, 810 S.W.2d at 639 (emphasis added); *see also Lenette Realty & Inv. Co. v. City of Chesterfield*, 35 S.W.3d 399, 405 (Mo.App. E.D.2000).

*Citizens for Safe Waste Management* held that some of the plaintiffs in that case had standing where they had averred that they owned property in close proximity to the property that was the subject of the

zoning decision and that their property would be "adversely affected by the fumes and odors, increased traffic, dust, and noise" generated by the approved landfill and suffer depreciation in their property value. 810 S.W.2d at 639. In so doing, the court noted that it is "important to limit the entitlement to judicial review to those parties capable of demonstrating a direct, specific, legally cognizable interest distinct from the interest of the general public. To permit each member of the public who disagrees with a zoning decision to seek judicial review would effectively destroy the administrative zoning structure." *Id.*

 "To show standing in a zoning decision, a plaintiff must establish either that a statute confers him or her with standing or that the decision adversely affects more distinctly and directly his or her interest than it affects the general public's interest." *Turner v. City of Independence,* 186 S.W.3d 786, 789 (Mo.App. W.D.2006); *see also F.W. Disposal South,* 168 S.W.3d at 611; *Lenette Realty,* 35 S.W.3d at 405. "If a zoning decision affects or will affect the plaintiff's property interest adversely, the plaintiff has the requisite interest in the controversy." *Turner,* 186 S.W.3d at 789.

The sole claim made by Appellants in their petition, their response to the motion to dismiss, and on appeal is that the decision of the Gaming Commission is contrary to the provisions of the Missouri Constitution. Assuming, *arguendo,* that the Gaming Commission's ruling is sufficiently akin to a zoning decision to render the aforementioned case law applicable to the case

at bar, Appellants have failed to aver that the Commission's decision had any adverse impact on Wimar Tahoe's property or that Wimar Tahoe otherwise had any legally cognizable interest in the decision distinct from the interest of the general public. Accordingly, Appellants failed to sufficiently establish that Wimar Tahoe had standing to challenge the ruling as a nearby property owner.

Next, Appellants claim that Columbia Sussex Corporation has standing to challenge the Gaming Commission's decision as a competitor of Casino One. In attempting to establish Columbia Sussex's status as a competitor, in their petition, Appellants averred that Columbia Sussex had a contract to purchase an ownership interest in the President Casino gambling boat, which is located within two thousand feet of the site approved for Casino One's excursion boat.

 Even assuming, *arguendo,* that Columbia Sussex is a competitor of Casino One,[1] it does not have standing as a competitor to challenge the decision of the Gaming Commission. " 'Generally speaking, the 'right' to be free from legitimate competition is not a right at all and is certainly not one protected by law.' " *Cont'l Coal,* 150 S.W.3d at 382 (quoting *St. Joseph's Hill Infirmary, Inc. v. Mandl,* 682 S.W.2d 821, 824 (Mo.App. E.D.1984)). An economic competitor may, however, be afforded standing based upon the legislative policy of the particular statute establishing the administrative review. *Mandl,* 682 S.W.2d at 824. "In the case of economic competitor standing, 'the right exists only when the legislature has broad-

---

1. "As a general rule, the party seeking relief must have a valid interest when the action commences." *Cont'l Coal, Inc. v. Mo. Land Reclamation Comm'n,* 150 S.W.3d 371, 381 (Mo.App. W.D.2004). At the time the petition was filed, Columbia Sussex was not operating

a casino in the St. Louis area; furthermore, there is no indication that Columbia Sussex was even licensed to operate a casino in the State of Missouri. It is, therefore, somewhat attenuated to characterize Columbia Sussex as a competitor of Casino One.

ened the class of affected parties to include those not otherwise having a constitutionally recognized interest.' " *Cont'l Coal,* 150 S.W.3d at 382 (quoting *Cmty. Care Ctrs. v. Mo. Health Facilities Review Committee,* 735 S.W.2d 13, 16 (Mo.App. W.D.1987)).

> For example, a bank has standing as an economic competitor to challenge the grant of a facility application to a competing bank under chapter 362 because chapter 362 expressly requires the director of finance to consider the impact on the other banks when evaluating such an application. In that context, the General Assembly has demonstrated a common legislative purpose to maintain the solvency of banks by allowing competitor banks to contest bank expansion whether in the form of a new bank charter or in expansion of service by an existing bank.

*Id.* (internal citations and quotations omitted).

Thus, absent a clear legislative policy demanding that consideration be given to competing casinos before a determination can be made as to whether the proposed site for a new casino complies with the constitutional requirements for a casino's location, a competitor's interest will not suffice to establish standing to challenge the administrative decision to approve the location. *See Litz,* 658 S.W.2d at 523 (holding that, absent a clear legislative policy demanding that consideration be given to competing health care institutions before a special use permit can be granted, the plaintiffs' general interest as a competitor did not suffice to establish standing to challenge the administrative grant of the special use permit).

Appellants fail to identify any statutory language that would evince an intent by the legislature to regulate competition in a similar fashion to the banking industry or to otherwise allow a competitor standing to appeal a decision by the Gaming Commission. Instead, Appellants attempt to rely upon language contained in a couple of Gaming Commission regulations which list the effect on competition as one of many factors that may be considered by the Gaming Commission in prioritizing the order in which applications are processed and evaluated, 11 C.S.R. 45–4.060, and in deciding whether to issue a gaming license, 11 C.S.R. 45–4.080. Obviously, regulations promulgated by the Commission are not evidence of the intent of the Legislature.

In attempting to argue that the legislature intended for a competitor to be able to appeal a decision by the Gaming Commission, Appellants rely upon *Legal Communications Corp. v. St. Louis County Printing & Publishing Co.,* 24 S.W.3d 744 (Mo.App. E.D.2000). In *Legal Communications,* a legal newspaper attempted to challenge a Circuit Court Board decision finding that a competing newspaper met the legal requirements for publishing foreclosure notices and certifying it to print such notices. The Eastern District of this Court offered the following rationale for holding that the competing newspaper had standing to challenge the board's decision:

> The status of Legal Communications as a competitor is not sufficient, by itself, to give it standing to challenge the Board's action. The status of a competitor has, however, been used in combination with policy considerations to grant standing to challenge the decisions of an administrative agency. In *Farmer's Bank of Antonia v. Kostman,* [577 S.W.2d 915 (Mo.App. W.D.1979)] the Western District held that a bank had standing to challenge the decision of the Director of Finance to issue a certificate of authority to a competitor. The Court reasoned that standing was necessary "not to protect a monopoly, but to keep

the system of banks within an equipoise of competition and regulation and so secure the public against the economic havoc of bank failure." The Supreme Court of the United States reached a similar holding in *Association of Data Processing Service Org. v. Camp* [397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)].

Section 493.100 contemplates a similar system of competitive regulation. The statute sets out minimum circulation and duration qualifications necessary to publish real estate foreclosure notices. The goal of the statute is to give notice to the widest audience possible. In order to ensure that each newspaper that publishes these notices can reach the entire audience, the statute mandates the duration and circulation requirements. To attain this goal, a newspaper must successfully compete with other newspapers. If Legal Communications is forced to face illegal competition, its ability to compete is impeded, and the purpose of the statute is emasculated. Legal Communications has standing to bring the instant action.

24 S.W.3d at 748.

*Legal Communications* is distinguishable and inapposite. Unlike the situation presented in that case, nothing about the restriction on the distance an excursion gaming boat may be from the river has any apparent, or even attenuated, connection with competition.

The statutes dealing with regulation of the excursion gambling boats within this state and the Gaming Commission in general do not evince any intent by the legislature to allow an economic competitor standing to appeal a decision of the Gaming Commission. *See* §§ 313.004 & 313.800–.850; *see also Gold Cross Ambulance, Inc. v. Mo. Dep't of Health,* 866 S.W.2d 473, 475 (Mo.App. W.D.1993) (hold-ing that competitor lacked standing to challenge the grant of an ambulance license). In the absence of such a clear legislative policy, Columbia Sussex lacks standing to challenge the Gaming Commission's ruling in its capacity as a competitor.

■■■■ Finally, Appellants claim that Columbia Sussex, Young, and Dehner all have standing to challenge the Gaming Commission's ruling as Missouri taxpayers. "Missouri courts allow taxpayer standing so that ordinary citizens have the ability to make their government officials conform to the dictates of the law when spending public money." *Ste. Genevieve Sch. Dist. R–II,* 66 S.W.3d at 11. "The right of a taxpayer, on behalf of himself and other taxpayers similarly situated, to bring an action to enjoin the illegal expenditure of public funds cannot be questioned." *E. Mo. Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 46 (Mo. banc 1989). "However, the mere filing of a lawsuit does not automatically confer standing on a taxpayer." *Id.* "[A] taxpayer has standing to challenge an alleged illegal spending of public funds if there is 'a direct expenditure of funds generated through taxation....'" *Harris v. Mo. Gaming Comm'n,* 869 S.W.2d 58, 60 (Mo. banc 1994).

Appellants contend that the expenditure of State funds to investigate Casino One's application and to conduct the hearing before the Gaming Commission are sufficient to grant them standing as taxpayers to challenge the Gaming Commission's decision. In particular, they claim: "It is undeniable that the Gaming Commission is expending public funds in connection with this matter, including the time of Commission staff and the use of Commission facilities and other resources in holding 'hearings,' preparing pertinent documents, and conducting deliberations."

"[W]ith regard to the fact that state funds were utilized to pay [Gaming Commission] employees and to hold the [Gaming Commission] hearings and committee meetings, these are not the type of expenditures of public funds that confer taxpayer standing." *Mid–Am. Georgian Gardens, Inc. v. Mo. Health Facilities Review Comm.*, 908 S.W.2d 715, 718 (Mo.App. W.D.1995). "They are general operating expenses which are incurred regardless of the decision made by the [Gaming Commission] in the particular case." *Id.* "The specific [Commission] action herein did not impact the direct expenditure of public funds in the manner sufficient to establish taxpayer standing." *Id.*

Appellants attempt to rely on *Harris v. Missouri Gaming Commission*, 869 S.W.2d 58 (Mo. banc 1994), in arguing that they have taxpayer standing, but *Harris* is readily distinguishable from the case at bar. In *Harris*, the plaintiff challenged the constitutionality of the statutes authorizing certain forms of gambling within the state and the expenditure of $3 million in start-up costs for the establishment of a gaming commission to regulate that gambling. 869 S.W.2d at 60. "Taxpayer standing [in *Harris* ] was conferred based on expenditure of state funds pursuant to the challenged act." *Mid–Am. Georgian Gardens*, 908 S.W.2d at 718.

Unlike *Harris*, "[i]n the case at bar, there is no allegation that the legislation or statute establishing the [Gaming Commission] and governing the . . . process is unconstitutional or illegal in any way, thereby causing the illegal expenditure of state funds." *Id.* "The rationale of *Harris* is inapplicable to the case at bar, where appellants alleged the [Gaming Commission]'s decision, not the statutory authority, is illegal." *Id.*

Appellants also attempt to rely upon *Akin v. Missouri Gaming Commission*, 956 S.W.2d 261 (Mo. banc 1997). *Akin* did not, however, address the issue of standing and did not involve a challenge to a specific decision by the Gaming Commission. 956 S.W.2d at 262.

Here, Appellants are simply challenging a decision of the Gaming Commission with which they disagree. They do not complain about the legality of any of the expenditures on which they rely in making their argument. Appellants do not challenge the authority of the Gaming Commission to maintain a staff, perform investigations, or conduct licensing hearings. Accordingly, they have failed to identify a direct expenditure of state funds resulting from the decision issued by the Gaming Commission that could possibly be deemed to be illegal.

In short, Appellants did not have a sufficient interest in the Gaming Commission's decision to give them standing as a landowner, competitor, or taxpayer to challenge that decision.

 We next consider whether Appellants had standing to pursue a declaratory judgment or a writ of prohibition. " 'In order to have standing in a declaratory judgment action, the plaintiff must have a legally protectable interest at stake.' " *Inman v. Mo. Dep't of Corr.*, 139 S.W.3d 180, 184 (Mo.App. W.D.2004) (quoting *Blue Cross & Blue Shield of Mo. v. Nixon*, 81 S.W.3d 546, 551 (Mo.App. W.D.2002)). "A legally protectable interest means a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief either immediate or prospective." *Id.* (internal quotations omitted). Similarly, in order to have standing to pursue a writ of prohibition, the party seeking relief must "have a legally cognizable interest in the subject matter." *State ex rel. Mink v. Wallace*, 84 S.W.3d 127, 129 (Mo.App. E.D.2002).

Appellants assert the same claims for standing to bring their declaratory judgment and writ of prohibition claims as they did in pursuing *de novo* review of the Gaming Commission's decision. For the same reasons set forth *supra*, Appellants have failed to establish that any of them have a legally cognizable interest as a nearby landowner, a competitor, or a taxpayer.

Because Appellants lacked standing to bring their petition, the trial court's dismissal of Appellants' petition is affirmed. Having reached this conclusion, we need not address Appellants' additional contention that the trial court improperly determined that this Court has original jurisdiction over challenges to the Gaming Commission's decisions.[2]

All concur.

---

**2.** We note, however, that Respondents' claim that § 313.840.2 vests jurisdiction in this Court to review all Gaming Commission decisions, regardless of whether the case is contested or noncontested, is without merit. Section 313.840.2, which provides that "[j]udicial review of all commission decisions relating to excursion gambling boat operations shall be directly to the state court of appeals for the western district of Missouri," only pertains to contested cases, where this court is reviewing the record made before the Gaming Commission. In a noncontested case, the "reviewing" court is required to proceed *de novo* and hear evidence on the merits of the case, make a record, and determine the facts. *State ex rel. Crowe v. Mo. State Highway Patrol,* 168 S.W.3d 122, 126 (Mo.App. W.D. 2005). The court "determines the evidence and renders judgment from that evidence." *Id.* Thus, the "review" performed by the court in a noncontested case is not appellate in nature. Were § 313.840.2 read to attempt to vest jurisdiction in this Court to handle such cases, that provision would run afoul of Article V, § 3 of the Missouri Constitution, which limits this Court's jurisdiction to *"general appellate jurisdiction* in all cases except those within the exclusive jurisdiction of the supreme court." (emphasis added).