STATE of Missouri ex rel. CHRISTIAN HEALTH CARE OF SPRINGFIELD, INC., et al., Appellants,

v.

MISSOURI DEPARTMENT OF HEALTH AND SENIOR SERVICES and R.H. Montgomery Properties, Inc., Respondents.

No. WD 66710.

Missouri Court of Appeals, Western District.

July 6, 2007.

Richard D. Watters and Katie C. Pawlitz, St. Louis, Terry C. Allen, Jefferson City, for Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kathleen R. Robertson, Asst. Atty. Gen., Jefferson City, for Missouri Department of Health and Senior Services.

James B. Deutsch and Jane A. Smith, Jefferson City, for R.H. Montgomery Properties, Inc.

Before ULRICH, P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Christian Health Care of Springfield East, Inc.; Christian Health Care of Springfield West, Inc.; Christian Health Care of Nixa, Inc.; Regional Care of Republic, LLC; James River Care Center, Inc.; Springfield Care Center, LLC; Magnolia Care Center, LLC; Skilled Health Facilities, Inc.; and Springfield Residential Center, Inc., appeal the dismissal of their petition, by the Circuit Court of Cole County, seeking a writ of mandamus [1] ordering the Missouri Department of Health and Senior Services (DHSS) to revoke the

---

1. In the alternative, the appellants sought a writ of prohibition enjoining the DHSS from issuing a license to Montgomery to operate Quail Creek. Because the license has already been issued, the petition for a writ of prohibition is moot such that we only address the petition as to the writ of mandamus.

license it issued, pursuant to § 198.022,[2] on January 17, 2006, retroactive to January 11, 2006, to the respondent, R.H. Montgomery Properties, Inc. (Montgomery), to operate The Neighborhoods of Quail Creek (Quail Creek) as a skilled nursing facility. As a basis for their writ, the appellants alleged that the DHSS, as a matter of law, should not have issued a license to Montgomery to operate Quail Creek as a skilled nursing facility because a Certificate of Need (CON), which is required by § 197.315.3 to be issued by the Missouri Health Facilities Review Committee (MHFRC) before the DHSS can issue a license to operate, pursuant to § 198.022, had never been obtained by Montgomery for the facility. They alleged that the CON that was issued by the MHFRC was not for the facility that was actually constructed by Montgomery. Hence, the appellants, in their petition, were not attacking the issuance of the CON that was, in fact, issued by the MHFRC to Montgomery, but rather, they were attacking the fact that no CON was ever issued for the facility which Montgomery sought to license. Although the appellants, in their petition, were clearly attacking the issuance of a license by the DHSS to Montgomery to operate Quail Creek, *as constructed,* on the basis that a statutory condition precedent for issuance of such license had not been satisfied, the issuance of a CON for the *same* facility for which the license was sought, the trial court dismissed the petition because it found that the appellants lacked standing to challenge the issuance by the MHFRC of the CON that was issued to Montgomery to operate Quail Creek.

On appeal, the appellants are claiming that the trial court, in dismissing their petition for a lack of standing to challenge the issuance of the CON to Montgomery,

misunderstood the issue that was presented by their petition. They claim that the trial court's basis for dismissing their petition incorrectly assumed that they were challenging the issuance of the CON by the MHFRC, when, in fact, they were challenging the issuance of the license by the DHSS, without Montgomery having first obtained, as required by § 197.315.3, a CON as to the actual facility for which the license was being sought. Accordingly, they claim that the fact they did not have standing to challenge the issuance of the CON in question is a red herring and, as a matter of law, cannot stand as a legal basis for dismissing their petition. With that as a backdrop, the appellants raise one point on appeal. They claim that the trial court erred in dismissing their petition seeking a writ of mandamus, for a lack of standing to challenge the issuance of the CON by the MHFRC. Apparently realizing that, even if we agree that the trial court's basis for dismissing for a lack of standing was in error, we still must affirm if its ruling as to standing on any other basis is correct, they claim that they do, in fact, have standing to challenge the issuance of a license by the DHSS to Montgomery to operate Quail Creek because as a competitor of Montgomery they had a vested interest in ensuring that they did not have to compete against illegal competition.

We affirm.

### Facts

In order to build a new health care facility in this state, § 197.315.1 provides that a party must first obtain a CON from the MHFRC. As constrained by § 197.315.2, the MHFRC can only issue a CON if it determines that the new facility is "needed." To that end, on November

---

**2.** All statutory references are to RSMo 2000, unless otherwise indicated.

12, 2002, Montgomery filed an application for a CON for Quail Creek, to be located in Springfield, Missouri. In its CON application, Montgomery stated that Quail Creek, when constructed, would not exceed 35,000 square feet, would contain 103 beds and cost approximately $3.8 million to construct. On December 27, 2002, the MHFRC approved Montgomery's application and, on January 3, 2003, issued it a CON for Quail Creek.

Soon after the CON for Quail Creek was issued, Montgomery began construction. As required by § 197.315.8, Montgomery filed progress reports every six months with the MHFRC. The July 2005 report indicated that Quail Creek was over budget, with an estimated final cost of approximately $7.1 million, and that the square footage had expanded to approximately 45,000 square feet, 10,000 square feet over the square footage on which the issuance of the CON was based.

With its July 2005 progress report, Montgomery filed a "cost overrun" application seeking the approval of the MHFRC for the changes in the allowed cost and square footage of the facility. On September 19, 2005, the MHFRC denied Montgomery's application for a "cost overrun." On October 12, 2005, pursuant to § 197.335, Montgomery filed its notice of appeal with the Administrative Hearing Commission (AHC) seeking review of the MHFRC's decision to deny its "cost overrun" application.

On December 16, 2005, the appellants filed a petition in the Circuit Court of Cole County, seeking a writ of prohibition to prohibit DHSS from issuing Montgomery a license to operate Quail Creek or, in the alternative, if a licensed had already been issued, a writ of mandamus requiring the DHSS to revoke Montgomery's license. The appellants' petition alleged, as a basis for relief, that the DHSS could not issue or, in the alternative, should not have issued, Montgomery a license to operate Quail Creek because Montgomery did not have a CON for the facility that was actually constructed. In other words, except in name only, they were claiming that the facility being licensed was not the same facility for which the requisite CON had been issued. On December 16, 2005, the trial court issued a "stipulated order in prohibition," which prohibited DHSS from issuing Montgomery a license to operate Quail Creek until further order of the court or until the AHC issued a final decision in Montgomery's appeal of its denial of its application for a "cost overrun."

On December 21, 2005, Montgomery filed a motion to intervene in the appellants' case against the DHSS in the circuit court and a motion to dismiss the appellants' petition due to a lack of subject matter jurisdiction, alleging that they lacked standing to challenge the issuance of the CON by the MHFRC to Montgomery to construct Quail Creek. The trial court sustained Montgomery's motion to intervene. And, on December 30, 2005, after a hearing on Montgomery's motion to dismiss, the trial court dismissed the appellants' petition on the basis that the controversy was not ripe for adjudication in that DHSS had not yet issued Montgomery a license to operate Quail Creek.

On January 17, 2006, Montgomery dismissed its appeal before the AHC of the MHFRC's denial of its application for a "cost overrun." On the same day, the DHSS issued a license to Montgomery to operate Quail Creek, retroactive to January 11, 2006, which was still under construction at that time. On January 19, 2006, the appellants filed an amended motion for reconsideration of its original petition, alleging that the controversy was now ripe for adjudication in that the DHSS had issued a license to Montgomery to operate

Quail Creek. On January 27, 2006, the trial court took up and heard the appellants' motion for reconsideration, which it granted and ordered its prior dismissal set aside. On January 31, 2006, after a recusal of judge for a conflict of interest and the assignment of a new judge, the trial court took up Montgomery's motion to dismiss for a lack of standing by the appellants to challenge the issuance, by the DHSS, of the license to Montgomery to operate Quail Creek. The motion to dismiss was sustained for a lack of standing to contest the CON issued to Montgomery by the MHFRC.

This appeal follows.

### I.

In their sole point on appeal, the appellants claim that the trial court erred in dismissing their petition for a writ of mandamus, asking the court to order the DHSS to revoke the license it issued to Montgomery to operate Quail Creek as a skilled nursing facility, for a lack of standing to challenge the MHFRC's issuance of the CON to Montgomery to build the facility, because standing to challenge the issuance of the CON, as a matter of law, was irrelevant in the determination of the writ. While we agree with the appellants that whether they had standing to challenge the CON issued to Montgomery to construct Quail Creek was irrelevant to the trial court's determination of their writ, such that it could not be used as a legal basis for dismissing their petition, because we find that they lacked standing as to the relevant issue presented by their petition, whether the license should have been issued by the DHSS to Montgomery to operate the facility, we nonetheless affirm the trial court's dismissal of the appellants' petition for a lack of standing.

In their petition for a writ of mandamus before the circuit court, the appellants at-tacked the issuance, pursuant to § 198.022, of the license to Montgomery by the DHSS to operate Quail Creek as a skilled nursing facility. In other words, they were seeking judicial review of an administrative agency decision. Article V, section 18, of the Missouri Constitution provides that, absent a statute or other law to the contrary, the Supreme Court shall promulgate rules directing how Missouri courts will review administrative decisions, findings, rules and orders. In that regard, Rule 100.01 provides: "The provisions of sections 536.100 through 536.150, RSMo, shall govern procedure in circuit courts for judicial review of actions of administrative agencies unless the statute governing a particular agency contains different provisions for such review." The issuance of a license to operate a skilled nursing facility is governed by § 198.022. And, while §, 198.039 provides for the procedure for review of the decision of the DHSS refusing to issue or revoke a license, there are no statutes expressly governing judicial review of the issuance of a license. Hence, assuming for the moment that the appellants had standing to seek judicial review of the DHSS's decision to grant a license to Montgomery to operate Quail Creek, we must look to the provisions of §§ 536.100–536.150, a.k.a. the Missouri Administrative Procedure Act (MAPA), to ascertain the procedure that the appellants were required to employ in gaining judicial review of the DHSS's issuance of a license to Montgomery to operate Quail Creek as a skilled nursing facility.

Section 536.140 governs judicial review by the circuit court of a contested case before an administrative agency. § 536.100; *BBCB, LLC v. City of Independence*, 201 S.W.3d 520, 526 (Mo.App.2006). Whereas, § 536.150 governs judicial review by the circuit court of an uncontested case. *BBCB*, 201 S.W.3d at 526. Section

536.010(4) defines a contested case as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing[.]" Thus, the issue in determining whether a case is contested is not whether a hearing was actually conducted, but whether one was required by law. There can be no dispute that the issuance of the license by the DHSS to Montgomery was uncontested such that review of that decision by the circuit court was governed by § 536.150. Review by the circuit court of an uncontested case is initiated by either a "suit for injunction, certiorari, mandamus, prohibition or other appropriate action." § 536.150.1. Here, the appellants sought review by mandamus. In its review, the circuit court:

> [M]ay determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

██ A party aggrieved by the circuit court's decision in a § 536.150 review, may appeal to this court. "On appeal from the circuit court of a noncontested administrative decision, we review the judgment of the circuit court, rather than the decision of the administrative agency. As such, our review is essentially the same as for other judgments in a judge-tried case." *State ex rel. Straatmann Enters., Inc. v. County of Franklin*, 4 S.W.3d 641, 645 (Mo.App.1999) (citation omitted). In reviewing a judge-tried case, we are governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and we will affirm the decision of the trial court unless it is not supported by substantial and competent evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Reichert v. Bd. of Educ. of City of St. Louis*, 217 S.W.3d 301, 304 (Mo. banc 2007). Having determined the correct procedure for seeking judicial review of the DHSS's decision, we now turn to the issue of whether the appellants had standing, in the first instance, to invoke that procedure.

As we discuss, *supra*, the trial court expressly found in its judgment that it was dismissing the appellants' petition for a lack of standing to challenge the issuance by the MHFRC of a CON to Montgomery to construct Quail Creek. In that regard, it found:

8. [Montgomery] challenged the subject-matter jurisdiction of this Court on the grounds that [the appellants] have no standing to challenge the issuance of a Certificate of Need under Section 197.335, RSMo.

9. [The appellants] as competitors of [Montgomery] and as affected parties under §§ 197.300–365, RSMo, have only limited statutory rights in the Certificate of Need proceedings before the Missouri Health Facilities Review Committee.

10. The issuance of a Certificate of Need by the Missouri Health Facilities Review Committee does not affect

any legally protectible interest of the [appellants].

11. [The appellants] have no standing. And, as we also discuss, *supra*, whether the appellants had standing to attack the issuance of the CON was totally irrelevant to the issue presented in their petition for a writ of mandamus such that the fact that they lacked standing as to that issue was irrelevant and could not form the basis for the trial court's dismissal. However, that is not the end of the issue inasmuch as we are to affirm the trial court's dismissal on any basis supported by the record. *City of Kansas City v. NY–Kan. Bldg. Assocs., L.P.*, 96 S.W.3d 846, 853 (Mo.App.2002) (stating the general rule that we are only concerned with the correctness of the trial court's ruling, and, as such, will affirm the trial court's ruling on any basis supported by the record). And, because we find that the appellants lacked standing to attack the issuance of the license by the DHSS to Montgomery to operate Quail Creek, the actual issue raised in their petition for a writ of mandamus, we must affirm the trial court's dismissal of their petition for a lack of standing.

As this court stated in *Columbia Sussex Corp. v. Missouri Gaming Commission*, 197 S.W.3d 137, 140–41 (Mo.App. 2006):

Without standing, a court has no power to grant the relief requested.

Standing asks whether the persons seeking relief have the right to do so. Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated. Where, as here, a question is raised about a party's standing, courts have a duty to determine the question of their jurisdiction before reaching substantive issues, for if a party lacks standing, the court must dismiss the case because it does not have jurisdiction of the substantive issues presented.

Appellate review of whether a party has standing to sue is conducted de novo. This court determines standing as a matter of law on the basis of the petition along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued.

. . . .

Section 536.150 allows judicial review of an agency decision in a noncontested case when the agency decision determines the legal rights, duties or privileges of any person, in other words, a decision involving individual rights and interests. For a party to have standing for review under § 536.150, the agency action must directly affect the private rights of the person seeking judicial review.

Whether a particular person has status to contest an administrative action is a question of law. Not every person who files a protest and is given an opportunity to be heard by an administrative agency has a right to appeal from the decision of the agency. Whether a person has standing to seek judicial review of an administrative decision is a question of law that depends upon a number of factors, including the nature and extent of the person's interest in the subject matter, the character of the administrative action, and the terms of the statute that created the right or the method of review.

(Quotation marks and internal citations omitted).

Pursuant to § 197.315.1, "[a]ny person who proposes to develop or offer a new institutional health service within the state must obtain a certificate of need from the MHFRC prior to the time such services

are offered." Under § 197.315.2, the MHFRC can only issue a CON if it determines that the new facility is "needed." If a CON is issued, the CON holder is required to seek the approval of the MHFRC for any "[p]roject cost increases, due to changes in the project application[,]" which exceed "the initial estimate by more than ten percent." § 197.315.8. Pursuant to § 197.315.3, "no state agency charged by statute to license or certify health care facilities shall issue a license to or certify any such facility, or distinct part of such facility, that is developed without obtaining a certificate of need." Hence, the DHSS was not authorized to issue Montgomery a license to operate Quail Creek unless it had first obtained a CON for that same facility. The appellants claim that the CON that was issued was issued for a smaller facility that was not constructed such that the license issued to Montgomery to operate Quail Creek, based on that CON, was in violation of the law or was illegal. The question for us, however, given the issue presented, is not whether that is the case, but whether the appellants had standing to assert that claim before the trial court in a § 536.150 proceeding for judicial review.

The appellants concede that there is no specific statute conferring them with standing to challenge the DHSS' issuance of a license to Montgomery to operate Quail Creek. While the CON laws are governed by Chapter 197, *Dep't of Soc. Servs., Div. of Med. Servs. v. Senior Citizens Nursing Home Dist. of Ray County*, 224 S.W.3d 1 (Mo.App. W.D. 2007), the licensing and regulation of nursing homes is governed by Chapter 198. And, as we noted, *supra*, § 198.039.1 provides, in pertinent part, that: "Any person aggrieved by an official action of the department either refusing to issue a license or revoking a license may seek a determination thereon by the administrative hearing

commission." Hence, by the express wording of the statute, the legislature has limited appeals of licensing decisions by the DHSS to persons who have been aggrieved by a decision of the DHSS *refusing to issue* a license or to *revoke* a license already issued. The statute does not include any provision for the circumstance in our case—the appellants purportedly being aggrieved by the DHSS's decision to *grant* Montgomery a license. From this, we can infer that the legislature did not intend to confer standing on a third party, not otherwise a party to the licensing proceeding, to challenge the DHSS's decision to grant a license to a competitor. *See Groh v. Ballard*, 965 S.W.2d 872, 874 (Mo. App.1998) (holding that "[a] standard rule of statutory construction is that the express mention of one thing implies the exclusion of another.").

■■■ The appellants contend that the fact that no statute, expressly or impliedly, confers standing on them to challenge the issuance of the license to Montgomery, does not mean that they are without standing. They contend that standing can otherwise be conferred by virtue of them being economic competitors of Montgomery. *See Legal Commc'ns Corp. v. St. Louis County Printing & Publ'g Co.*, 24 S.W.3d 744, 747–48 (Mo.App.2000). They readily admit, however, that in the context of standing to appeal an administrative decision, it is well established that merely being an economic competitor is not enough to confer standing, the rationale being that: "Generally speaking, the 'right' to be free from legitimate competition is not a right at all and is certainly not one protected by law." *Columbia Sussex Corp.*, 197 S.W.3d at 142 (quotation marks and citation omitted). Nonetheless, they assert that an economic competitor may be afforded standing. "In the case of economic competitor standing, the right exists

only when the legislature has broadened the class of affected parties to include those not otherwise having a constitutionally recognized interest." *Id.* at 142–43 (quotation marks and citations omitted). That occurs where it can be determined that the purpose and policy rooted in the values set out in the legislation in question places the party in the "zone of interest" that the legislation seeks to protect, such that the party should have standing to enforce the statute. *Legal Commc'ns Corp.,* 24 S.W.3d at 747–48. Hence, the question for us, in determining whether the appellants had standing to challenge the issuance of the license to Montgomery, is whether the licensing scheme of chapter 198 was intended by the legislature to protect the appellants from competitors who were granted licenses in contravention of the law governing such licensing, which they assert in their petition as a basis for their requested writ of mandamus.

■ Section 198.022, which grants the DHSS the authority to issue licenses for the operation of skilled nursing homes, is part of the Omnibus Nursing Home Act. "The Omnibus Nursing Home Act ... addresses the need to insure adequate patient care through a variety of statutory devices." *Villines v. Div. of Aging & Mo. Dep't of Soc. Servs.,* 722 S.W.2d 939, 944 (Mo. *banc* 1987). "The obvious purpose of this [Act] is to protect the health and safety of citizens who are unable fully to take care of themselves, particularly the more elderly persons, who ... spend their later years in homes of the type which the statute would license or regulate[.]" *Id.* at 943 (quotation marks and citation omitted). Hence, the clear goal in the requiring that nursing homes be licensed is to protect residents of nursing homes. There is nothing in the Omnibus Nursing Home Act, which indicates that economic competitors are in the zone of interest that the

legislature was seeking to protect by the Act, conferring them with standing to challenge the issuance of a license by the DHSS.

Alternatively, the appellants claim that, even if they lacked standing under the specific statutory scheme of Chapter 198, concerning the licensing of skilled nursing home facilities, they have standing by virtue of § 536.150. This argument ignores the parameters of review under § 536.150. As we noted, *supra:*

> Section 536.150 allows judicial review of an agency decision in a noncontested case when the agency decision determines the legal rights, duties or privileges of any person, in other words, a decision involving individual rights and interests. For a party to have standing for review under § 536.150, the agency action must directly affect the private rights of the person seeking judicial review.

*Columbia Sussex Corp.,* 197 S.W.3d at 141 (quotation marks and citation omitted). Hence, § 536.150 is of no benefit to the appellants with respect to standing unless they can show that the DHSS's licensing of Montgomery to operate Quail Creek directly affected their private rights. And, that, as we discuss, *supra,* with respect to being a competitor of Montgomery, is not something the appellants can show.

For the reasons stated, we find that, while the trial court erred in dismissing the appellants' petition for mandamus for a lack of standing, on the basis that they could not challenge the issuance of the CON to Montgomery by the MHFRC to construct Quail Creek, as provided in § 197.335, it was not error to dismiss for a lack of standing on the alternative ground that they lacked standing to challenge the issuance of the license to Montgomery by the DHSS to operate Quail Creek. And, because we are to affirm the trial court's

dismissal for a lack of standing on any basis supported by the record, *NY–Kan. Bldg. Assocs.*, 96 S.W.3d at 853, we affirm.

## Conclusion

The judgment of the circuit court dismissing the appellants' petition, seeking a writ of mandamus ordering the DHSS to revoke the license which was granted by the DHSS to Montgomery to operate Quail Creek, for a lack of standing, is affirmed.

ULRICH, P.J., and LOWENSTEIN, J., concur.