

# In the
# Missouri Court of Appeals
## Western District

DAVID J. HARRIS, )
)
Appellant, )
)           WD87716
v. )           OPINION FILED:
)           OCTOBER 14, 2025
MISSOURI ETHICS COMMISSION, )
)
Respondent. )

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,**
**Thomas N. Chapman, Judge, Renee Hardin-Tammons, Special Judge**

David J. Harris appeals the circuit court's judgment which found that Harris lacks

standing to challenge the Missouri Ethics Commission's ("MEC") dismissal of a

complaint Harris filed with the MEC.  Harris raises five points on appeal.  Each point

contends, for various reasons, that the circuit court erred in dismissing Harris's petition

for lack of standing.  We affirm.

## Background and Procedural Information

In March 2022, Harris and another individual filed suit in the circuit court against

University City, alleging that city officials were using public funds to generate support

for a local ballot measure in violation of Section 115.646.[1] *Sullivan v. City of University City*, 677 S.W.3d 844, 846 (Mo. App. 2023). The petitioners requested, among other things, that the circuit court enjoin the respondents from using public funds to promote the ballot measure. *Id.* at 847. After this request was denied, the petitioners filed an amended petition seeking a declaratory judgment that the direct expenditure of public funds by the city's public officials to promote the ballot measure violated Section 115.646. The circuit court dismissed the suit finding, in part, that the petitioners have no private right of action under Section 115.646. *Id.*

The petitioners appealed, arguing among other things that Section 115.646 provides taxpayers as a protected class with a private right of action to enforce its provisions. *Id.* at 848. On August 22, 2023, the Eastern District Court of Appeals affirmed the circuit court's dismissal, holding that the petitioners had not demonstrated that taxpayers' interests are not protected adequately by the remedies provided by the legislature, namely enforcement by the MEC, a local prosecutor, or the Missouri Secretary of State. *Id.* at 853.

Harris subsequently filed a complaint with the MEC (and the Missouri Secretary of State) on December 20, 2023, alleging a violation of Section 115.646. Specifically, Harris challenged the way public funds were used by University City "in relation to Proposition F, a ballot measure that was on [University City's] April 5, 2022 election

---

[1]All statutory references are to the Revised Statutes of Missouri, as currently updated, unless otherwise noted.

ballot." Section 115.646 provides, in part, that "No contribution or expenditure of public funds shall be made directly by any officer, employee or agent of any political subdivision…to advocate, support, or oppose the passage or defeat of any ballot measure…."

On February 16, 2024, the MEC notified Harris of its "Final Action" regarding the complaint. The MEC informed Harris that it gave "final consideration" to Harris's complaint at a February 14, 2024, meeting, and that an "investigation into the matter did not support the allegations." The MEC stated that informational material produced by the respondents about the ballot measure "did not include any words of express advocacy, nor its functional equivalent." Further, "from the facts presented, the Commission found no reasonable grounds exist to support violations of Chapter 115, RSMo., and dismissed the complaint."

On March 15, 2024, Harris filed a Petition for Review in the circuit court alleging that the "express advocacy, nor its functional equivalent" language used by the MEC was an improper legal standard for evaluating alleged violations under Section 115.646. Harris alleged that the correct legal standard for a violation of the statute is the plain language of the statute and the common understanding of that plain language.

Harris's petition acknowledged that Section 105.961.1 provides no provisions for administrative review of a dismissed complaint by the MEC, but alleged that judicial review is proper under Section 536.150. Harris requested remand of the complaint to the MEC with instructions "to apply the correct legal standard of the plain language of the

Statute and the common understanding of that plain language when evaluating the Complaint and the Proposition F materials for a violation of the Statute."

In response, the MEC's answer noted that, while Harris disputed the MEC's use of the "words of express advocacy or its functional equivalent" standard by which it reviewed Harris's complaint, the Missouri Supreme Court used the term "express advocacy" when ruling on a claim brought under Section 115.646 and found that Section "115.646 is intended to prohibit the use of public funds for 'express advocacy,' which is a narrow category of conduct under the First Amendment[.]" *Sullivan*, 677 S.W.3d at 849 (citing *City of Maryland Heights v. State*, 638 S.W.3d 895, 900 n.6 (Mo. banc 2022)).

At a case management conference on August 16, 2024, the circuit court inquired into whether Harris had standing to bring his action under Section 536.150. After briefing and argument by the parties, the court entered judgment on November 19, 2024, dismissing Harris's petition for lack of standing. The court concluded that Harris failed to demonstrate that his "legal rights, duties or privileges" were affected by the MEC's decision not to proceed, or that he suffered any "unique pecuniary impact" such as would have created tax payer standing. Further, that Harris "lacks injury in fact."

This appeal follows.

**Standard of Review**

Standing is a question of law reviewed *de novo* on appeal. *Schweich v. Nixon*, 408 S.W.3d 769, 773 (Mo. banc 2013). "Standing is a necessary component of a justiciable case that must be shown to be present prior to adjudication on the merits." *Id.* at 774

(internal citation and quotation marks omitted). "Standing cannot be waived, may be raised at any time by the parties, and may [] be addressed *sua sponte* by the trial court or an appellate court." *Cook v. Cook*, 143 S.W.3d 709, 711 (Mo. App. 2004).

### Points on Appeal

Harris raises five points on appeal. Each point contends, for various reasons, that the circuit court erred in dismissing Harris's petition for lack of standing. In Point I, Harris contends that he satisfies the requirements for standing under Section 536.150 because he has a legal right to have the MEC use the correct legal standard for his complaint to the MEC. In Point II, Harris contends that his legal right to have the MEC use the correct legal standard when considering his complaint is a "private right." In Point III, Harris argues that he has a "personal interest" in the MEC's use of the correct legal standard when applying the law to the facts of his complaint. In Point IV, Harris contends that he was "injured" by the MEC's alleged failure to use the correct legal standard when addressing the complaint. In Point V, Harris contends that the courts, not the MEC, have a constitutional duty to determine the correct legal standard. We address these points together.

"The MEC is an administrative body established by the General Assembly to administer and enforce a number of ethics-related laws, including those relating to lobbyists, public officials, and campaign finance disclosure." *Impey v. Missouri Ethics Comm'n*, 442 S.W.3d 42, 44 (Mo. banc 2014) (citing § 105.955). "To aid the agency in

5

its enforcement of these laws, the MEC is authorized to receive complaints alleging that any law under its supervision has been violated." *Id.* (citing § 105.957).

Under Section 105.957.1(6), the MEC shall receive "any complaints" alleging violations of the "provisions of the constitution or state statute or order, ordinance or resolution of any political subdivision relating to the official conduct of officials or employees of the state and political subdivisions."[2] "No complaint shall be investigated unless the complaint alleges facts which, if true, fall within the jurisdiction of the commission." § 105.957.2. "Within five days after receipt of a complaint by the commission, a copy of the complaint, including the name of the complainant, shall be delivered to the alleged violator." *Id.*

Pursuant to Section 105.961, upon receipt of a Section 105.957 complaint, the MEC assigns the complaint to a special investigator who investigates, determines the merits of the complaint, and submits a report to the MEC. After reviewing the report, the MEC determines if there are reasonable grounds to believe that a violation has occurred. § 105.961.1. If there are no reasonable grounds to believe that a violation exists, the complaint is dismissed. *Id.*

If the MEC finds reasonable grounds to believe a criminal law was violated, and "and if the commission believes that criminal prosecution would be appropriate upon

---

[2]Section 105.955.14 sets forth the various duties and responsibilities of the MEC "relevant to the impartial and effective enforcement of sections 105.450 to 105.496 and chapter 130, as provided in sections 105.955 to 105.963[.]"

6

vote of four members of the commission," Section 105.961.2 details how the MEC can refer the matter for prosecution. When the commission finds reasonable grounds to believe that a non-criminal violation has occurred or that criminal prosecution is not appropriate, Section 105.961.3 details how the MEC must proceed.

In a meeting not open to the public, the "commission shall determine, in its discretion, whether or not that there is probable cause that a violation has occurred." *Id.* If the MEC, by vote of at least four members of the commission, finds probable cause exists that a violation occurred, the MEC "may refer its findings and conclusions to the appropriate disciplinary authority over the person who is the subject of the report…." *Id.* The subject of the report may then appeal the determination of the MEC to the administrative hearing commission. *Id.* The MEC may take other action as specified in Section 105.961.4 which, other than a referral for criminal prosecution, may be appealed by the subject of the complaint. § 105.961.5.

"If the commission finds that any complaint is frivolous in nature or finds no probable cause to believe that there has been a violation, the commission shall dismiss the case." § 105.957.4. In such cases, "the commission shall issue a public report to the complainant and the alleged violator stating with particularity its reasons for dismissal of the complaint." *Id.* Upon such issuance, the complaint and all related materials are public record as defined in Chapter 610. *Id*

"In Missouri, the right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists." *Fannie Mae v. Truong*, 361 S.W.3d 400, 403

7

(Mo. banc 2012) (internal quotation marks and citation omitted). As detailed above, while the legislature expressly provides an appeal avenue for complaint subjects under certain circumstances following the procedures for contested cases,[3] the legislature sets forth no appeal avenue for the MEC's dismissal of a complaint.[4] From this we infer the legislature did not intend to allow appeals regarding dismissed complaints. *See Groh v. Ballard*, 965 S.W.2d 872, 874 (Mo. App. 1988) (holding that "[a] standard rule of statutory construction is that the express mention of one thing implies the exclusion of another.").[5]

Even if Section 536.150 is an appeal avenue for a dismissed MEC complaint, which we find no support for in the appeal procedures discussed in Section 105.961, for

---

[3] "The hearing shall be conducted pursuant to the procedures provided by sections 536.063 to 536.090 and shall be considered to be a contested case for purposes of such sections." § 105.961.3.

[4] Of note, there are also no provisions for appealing the MEC's initial determination that there are reasonable grounds to believe a violation of law has occurred. When the MEC finds reasonable grounds to believe that a violation of a criminal law has occurred and refers the matter for prosecution, the statutes do not provide the subject of the complaint with an appeal avenue to challenge the MEC's findings or referral. 105.961.2, 5. Likewise, the subject of the complaint has no appeal rights simply where the MEC finds reasonable grounds to believe that a violation of a non-criminal law occurred (or that criminal prosecution is not appropriate). 105.961.2. It is only after a hearing wherein the MEC determines by vote of at least four commissioners "in its discretion, whether or not that there is probable cause that a violation has occurred," a course of action under Section 105.961.3-5 has been determined, and the subject of the complaint has actual notice of the proposed action, that the subject of the complaint may appeal the decision to the administrative hearing commission. § 105.961.3-5.

[5] Under 105.955.14(7), the MEC has the authority to "promulgate rules relating to the provisions of sections 105.955 to 105.963 and chapter 130." No MEC rules provide for an appeal of dismissed complaints.

8

standing to raise a Section 536.150 claim, the appellant still has to prove the dismissal directly affected the appellant's private rights. *State ex rel Christian Health Care of Springfield, Inc., v. Missouri Dept. of Health and Senior Services*, 229 S.W.3d 270, 276 (Mo. App. 2007).[6]

> Not every person who files a protest and is given an opportunity to be heard by an administrative agency has a right to appeal from the decision of the agency. Whether a person has standing to seek judicial review of an administrative decision is a question of law that depends upon a number of factors, including the nature and extent of the person's interest in the subject matter, the character of the administrative action, and the terms of the statute that created the right or the method of review.

*Id.* (quoting *Columbia Sussex Corp. v. Missouri Gambling Commission*, 197 S.W.3d 137, 140-41 (Mo. App. 2006)). "If a party's interests are unaffected by resolution of an issue he has no standing to raise it." *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 227 (Mo. banc 1982).

In Point I, Harris claims that he has a "legal right" to have the MEC use the correct legal standard when applying the law to the facts of his complaint. Yet, our legislature entrusts various entities with protecting public rights, keeping the peace, and administering justice, and simply having the right to make a complaint does not necessarily come with additional rights. While Harris argues that the MEC will go

---

[6]Section 536.150 provides, in part, that when any administrative officer or body has rendered a decision not subject to administrative review, "determining the legal rights, duties or privileges of any person," and there is no other provision for judicial inquiry into or review of such decision, suit may be brought in court to challenge the decision. Section 536.150, by its express terms, does not apply to contested cases. § 536.150.2.

9

unchecked if he has no ability to challenge the MEC's interpretation of the law, he cannot show that the legislature granted him that authority.

In Point II, Harris argues that his "private right" to challenge an MEC complaint dismissal is akin to the "private right" to "welfare benefits" discussed in *Hill v. State Dept. of Public Health and Welfare*, 503 S.W.2d 6, 7 (Mo. banc 1973), which involved an individual's permanent and total disability benefits being suspended. Harris fails to explain how a dismissed MEC complaint is analogous to lost disability benefits, and we find no similarities.

He also cites *Genesis School, Inc. v. Missouri. St. Bd. Of Educ.*, 688 S.W.3d 242, 251-252 (Mo. App. 2024), in arguing that he has a "private right" to challenge the dismissal of his complaint. In *Genesis*, this court found that a charter school had standing under Section 536.150 to challenge revocation of its charter because it had a "private right" in and to its charter by virtue of a contractional relationship with the Missouri Charter Public School Commission. *Id.* The school had a "personal claim" because its private right was directly impacted by revocation, and thus "standing to protect that private right pursuant to judicial review" via Section 536.150. Again, Harris fails to explain the connection with his own case, or how his situation is not more akin to *State ex rel. St. Francois Cnty. Sch. Dist. R-III v. Lalumondier*, 518 S.W.2d 638 (Mo. 1975), which is distinguished in *Genesis*.

"In *Lalumondier*, a school district attempted to challenge a board of equalization determination that failed to increase the assessed valuation of real property not owned by

the school district but within the school district's boundaries." *Genesis*, 688 S.W.3d at 251. The Missouri Supreme Court determined that the school district had no right to judicial review because "the indirect impact of an administrative agency's decision on a 'public interest' is not a 'private right' involving a 'personal claim' sufficient to support standing to pursue section 536.150 judicial review." *Id.* at 252.

Here, Section 105.957.2 allows any "natural person" to file a complaint with the MEC and contains no threshold requirement that a complainant's legal rights, duties, or privileges must have been impacted in order to make a complaint. Section 536.150 judicial review, however, requires private rights to be impacted and, like the school district in *Lalumondier*, Harris has proven only a potential public interest in the subject matter of his complaint.

In Point III, Harris contends that he "has a personal interest in the MEC's use of the correct legal standard when applying the law to the facts" of his complaint, because of "the several years of litigation in which Harris was involved with this issue prior to the Complaint." Yet, litigation alone is not proof of a personal interest in the subject matter, and the Eastern District in *Sullivan v. City of University City* expressly advised Harris that he had no private right of action to enforce Section 115.646, despite his claim that as a taxpayer he was within a protected class with a private right of action. 677 S.W.3d at 853. Harris now claims that he has a private right to ensure the MEC properly enforces Section 115.646. Again, Harris proves only a potential public interest in the MEC's enforcement of Section 115.646.

11

In Point IV, Harris argues that he was "injured" by the MEC's alleged use of an incorrect legal standard when applying the law to the facts of Harris's complaint. In support, he discusses *Courtright v. O'Reilly Auto*, 604 S.W.3d 694, 704 (Mo. App. 2020), which held, in part, that a prospective employee had standing to raise a claim under the Fair Credit Reporting Act. The prospective employee had an employment offer revoked after the employer erroneously determined the man had been found guilty of stealing. *Id.* The employer failed to follow proper procedure which could have uncovered the mistake and prevented the offer revocation. *Id.* We found that the prospective employee suffered an actual injury sufficient to establish standing. *Id.* Here, Harris fails to explain how any injury he purports to have due to the MEC's dismissal of his complaint is similar to the concrete injury associated with the erroneous job loss discussed in *Courtright*.

In his final point on appeal, Harris argues that the courts, and not the MEC, have a constitutional duty to determine the correct legal standard the MEC is to use, and "Harris is the only person who can provide reviewing courts the opportunity to exercise the constitutional duty to 'say what the law is'" and, consequently, Harris "must have standing to provide reviewing courts the opportunity." Yet, Harris can only have standing under Section 536.150 if he shows that the MEC's dismissal of his complaint determined his legal rights, duties, or privileges. He has not.

Harris's points on appeal are denied.

**Conclusion**

The circuit court did not err in dismissing Harris's Petition for Review for lack of standing. Harris fails to prove that he has any right to appeal the MEC's dismissal of his complaint. The circuit court's judgment is affirmed.

_____
Anthony Rex Gabbert
Chief Judge

All concur.

13