The Department and Tesla each timely appealed, and this court ordered the cases consolidated.
Analysis
Point I-Standing
In the first point of the Department's and Tesla's briefs, they assert that the Plaintiffs lacked standing to bring this action as economic competitors of Tesla and as Missouri taxpayers.[3] In response, Plaintiffs argue that they have competitor, taxpayer, and ministerial standing. Our ruling on Point I is dispositive of the appeal.[4]
"Standing is a question of law, which is reviewed de novo." Manzara v. State , 343 S.W.3d 656, 659 (Mo. banc 2011). "Regardless of an action's merits, unless the parties to the action have proper standing, a court may not entertain the action." E. Mo. Laborers Dist. Council v. St. Louis Cty. , 781 S.W.2d 43, 45-46 (Mo. banc 1989). "In order to have standing in a declaratory judgment action, the plaintiff must have a legally protectable interest at stake." Columbia Sussex Corp. v. Mo. Gaming Comm'n , 197 S.W.3d 137, 145 (Mo. App. W.D. 2006) (internal quotation omitted).
"A legally protectable interest means a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief either immediate or prospective." Id. (internal quotation omitted). "Similarly, in order to have standing to pursue a writ of prohibition, the party seeking relief must have a legally cognizable interest in the subject matter." Id. (internal quotation omitted). The party seeking relief has "the burden of establishing that they have standing." Manzara , 343 S.W.3d at 659.
To determine whether the legislature intended to confer standing on a *590 third party to challenge licensure, we look to the governing statutes. "Missouri's motor vehicle dealer licensing requirements are found in sections 301.550 to 301.573." Shiplet v. Copeland , 450 S.W.3d 433, 436 n.4 (Mo. App. W.D. 2014). Sections 301.559 and 301.560 contain application requirements for the issuance of, among others, licenses for motor vehicle dealers. A "motor vehicle dealer" or "dealer" is defined as:
any person who, for commission or with an intent to make a profit or gain of money or other thing of value, sells, barters, exchanges, leases or rents with the option to purchase, or who offers or attempts to sell or negotiates the sale of motor vehicles or trailers whether or not the motor vehicles or trailers are owned by such person[.]
§ 301.550.1(8). Dealers are divided into nine classes; here, the relevant class is "[f]ranchised new motor vehicle dealers." § 301.550.3(2). Section 301.562.1 specifically gives the applicant or licensee the right to file a complaint with the Administrative Hearing Commission if the Department refuses to issue or renew any license required pursuant to sections 301.550 to 301.580:
The department may refuse to issue or renew any license required pursuant to sections 301.550 to 301.580.... The department shall notify the applicant or licensee in writing ... of the reasons for the refusal to issue or renew the license and shall advise the applicant or licensee of his or her right to file a complaint with the administrative hearing commission as provided by chapter 621.
By the express wording of the statute, the legislature has limited appeals of licensing decisions by the Department to persons who have been aggrieved by the Department's decision refusing to issue a license or revoking a license already issued. The statute does not authorize appeals from the Department's decision to grant a license. See State ex rel. Christian Health Care of Springfield, Inc. v. Mo. Dep't of Health & Senior Servs. , 229 S.W.3d 270, 277 (Mo. App. W.D. 2007) (interpreting statute governing licensing and regulation of nursing homes to grant standing to a person aggrieved by the refusal to issue or the revocation of a license to appeal to the Administrative Hearing Commission but by silence does not grant standing to appeal of the grant of a license). "From this, we can infer that the legislature did not intend to confer standing on a third party, not otherwise a party to the licensing proceeding, to challenge the [Department's] decision to grant a license to a competitor." Id. (citing Groh v. Ballard , 965 S.W.2d 872, 874 (Mo. App. W.D. 1998) (holding that "[a] standard rule of statutory construction is that the express mention of one thing implies the exclusion of another")). Plaintiffs fail to identify any statutory language evincing an intent by the legislature to include them within the "zone of interest" covered by Chapter 301, conferring them with standing to appeal a motor vehicle dealer licensing decision by the Department in which they are not a licensee or applicant aggrieved by a licensing decision by the Department.
Competitor Standing
Even though the Chapter 301 licensing statutes do not expressly or impliedly confer standing on Plaintiffs to challenge the issuance of the license to Tesla, Plaintiffs contend that their status as economic competitors of Tesla gives them a legally protected interest and confers standing. Plaintiffs alleged in their petition that the Department's decision to issue and renew new motor vehicle dealer licenses to Tesla created a "non-level playing field." Plaintiffs claim that they will be at a disadvantage competing with Tesla because they are required to establish a bona fide place of business and sell vehicles *591 through a properly licensed dealer holding a valid franchise agreement with its manufacturer while Tesla is permitted to sell directly to the public.
"[I]t is well established that merely being an economic competitor is not enough to confer standing...." Christian Health Care , 229 S.W.3d at 277. "Generally speaking, the 'right' to be free from legitimate competition is not a right at all and is certainly not one protected by law." Columbia Sussex Corp. , 197 S.W.3d at 142 (internal quotation omitted). "In the case of economic competitor standing, the right exists only when the legislature has broadened the class of affected parties to include those not otherwise having a constitutionally recognized interest." Id. at 142-43 (internal quotation omitted). "That occurs where it can be determined that the purpose and policy rooted in the values set out in the legislation in question places the party in the 'zone of interest' that the legislation seeks to protect, such that the party should have standing to enforce the statute." Christian Health Care , 229 S.W.3d at 278. As discussed supra , the licensing scheme of Chapter 301 was not intended by the legislature to protect the Plaintiffs from competitors who Plaintiffs allege were granted licenses in contravention of the law governing such licensing. See id. at 277-78.
Nevertheless, Plaintiffs contend that they have standing to challenge the issuance of the license to Tesla because they are in the "zone of interest" of the Motor Vehicle Franchise Practices Act ("MVFP Act"). Plaintiffs rely on the "public policy statement" in section 407.811:
It is declared to be the public policy of the state to provide for fair and impartial regulation of those persons engaged in the manufacturing, distributing, importing, or selling of motor vehicles. The provisions of the MVFP act shall be administered in such a manner that will promote fair dealing and honesty in the motor vehicle industry and among those engaged therein without unfair or unreasonable discrimination or undue preference or advantage. It is further declared to be the policy of the state to protect the public interest in the purchase and trade of motor vehicles so as to ensure protection against irresponsible vendors and dishonest or fraudulent sales practices and to assist, provide, and secure a stable, efficient, enforceable, and verifiable method for the distribution of motor vehicles to consumers in the state.
However, the purpose of the MVFP Act is to protect franchisees "from the 'unlawful' practices of franchisors with respect to franchises in the possession of franchisees." Ackerman Buick, Inc. v. Gen. Motors Corp. , 66 S.W.3d 51, 62 (Mo. App. E.D. 2001). While franchisors are prohibited from engaging in business in Missouri without being licensed as provided in sections 301.550 to 301.573, § 407.818, the MVFP Act does not regulate motor vehicle dealer licensing procedures.[5]
*592 Ministerial Standing
Plaintiffs also allege that they have standing to seek a writ of prohibition because the Department failed to perform its ministerial duties with regard to the issuance and renewal of dealer licenses to Tesla. Plaintiffs alleged in their petition that the Department "had no authority to do anything other than deny the original dealer license application filed by Tesla and deny all renewal applications. By granting those applications, [the Department] breached this ministerial duty."
"A ministerial duty is of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." State ex rel. Kansas City Power & Light Co. v. McBeth , 322 S.W.3d 525, 531 (Mo. banc 2010) (internal quotation omitted). The "ministerial duty" the Department is required to perform is to review the application and other documentation for licensure required under section 301.560.
"In contrast, a discretionary duty necessarily requires the exercise of reason in the adoption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." Id. (internal quotation omitted). Under section 301.562.1, "[t]he [D]epartment may refuse to issue or renew any license required pursuant to sections 301.550 to 301.580 for any one or any combination of causes stated in subsection 2 of this section." (Emphasis added.) Also, "at the discretion of the director," the Department may suspend or revoke a license issued under sections 301.550 to 301.580 for certain acts or events deemed to be a "clear and present danger to the public welfare." § 301.562.5 (emphasis added). In lieu of acting under subsections 2 or 6 of section 301.562, the Department has the discretion to enter into an agreement with the license holder to ensure future compliance. § 301.562.7. Because the Plaintiffs' challenge is to the Department's discretionary duty, their claim of ministerial standing is without merit.
Taxpayer Standing
Finally, Plaintiffs allege that their status as taxpayers gives them a legally protected interest and confers standing. Plaintiffs alleged in their petition and the statement of facts filed with their summary judgment motion that they each pay "income, property, fuel and sales/use taxes to the State of Missouri." Plaintiffs alleged in their petition that these taxes "are used to fund the Missouri Department of Revenue and the Motor Vehicle Bureau within the Department of Revenue."
"A taxpayer need not allege that it suffered a direct personal loss as a result of the challenged act." Airport Tech Partners, LLP v. State , 462 S.W.3d 740, 745 (Mo. banc 2015). But "the mere filing of a lawsuit does not confer taxpayer standing upon a plaintiff." Manzara , 343 S.W.3d at 659. Instead, the plaintiff must establish that one of three conditions exists: "(1) a direct expenditure of funds generated through taxation; (2) an increased levy in taxes; or (3) a pecuniary loss attributable to the challenged transaction of a municipality." Id. Plaintiffs rely on the first option as their basis for standing as aggrieved taxpayers. A "direct expenditure" of funds means "a sum paid out, without any intervening agency or *593 step, of money or other liquid assets that come into existence through the means by which the state obtains the revenue required for its activities." Id. at 660. "[I]n order to establish standing under the first option, a Missouri taxpayer needs to show only that his or her taxes went or will go to public funds that have or will be expended due to the challenged action." City of Slater v. State , 494 S.W.3d 580, 587 (Mo. App. W.D. 2016) (internal quotation omitted).
However, "[n]ot all uses of governmental revenue are 'direct' expenditures under these standards." Id. "A series of cases holds that 'general operating expenses which [an agency] incurs regardless' of the allegedly illegal activity are not 'direct' expenditures, and are insufficient to establish taxpayer standing." Id. (quoting John T. Finley, Inc. v. Mo. Health Facilities Review Comm. , 904 S.W.2d 1, 3 (Mo. App. W.D. 1995) ). "Thus, salaries for staff time of [agency] employees, correspondence and telephone calls used to engage in the allegedly unlawful activity are not the type of expenditure of public funds which would give standing, as they are general operating expenses which would be incurred whether or not the challenged transaction took place." Id. (internal quotation omitted) (citing Mid-Am. Georgian Gardens, Inc. v. Mo. Health Facilities Review Comm. , 908 S.W.2d 715, 718 (Mo. App. W.D. 1995) ; Columbia Sussex Corp. v. Mo. Gaming Comm'n , 197 S.W.3d 137, 145 (Mo. App. W.D. 2006) ; Cmty. Health Care Ctr. of Lemay v. Mo. Health Facilities Review Comm. , 92 S.W.3d 232 (Mo. App. W.D. 2002) ).
Plaintiffs alleged in their petition that they are aggrieved as taxpayers because the Department has "expended public taxpayer funds with regard to license number D649, and will continue to do so each year that Tesla applies for license renewal." Even if the Department expended funds for the salaries of the personnel who reviewed the applications for issuance and/or renewal of licenses to Tesla, this is not the type of expenditure of public funds which would establish taxpayer standing, as they are general operating expenses which would be incurred whether or not the challenged transaction took place. Plaintiffs have failed to demonstrate that the Department's actions "impact[ed] the direct expenditure of public funds of the nature sufficient to establish taxpayer standing." Finley , 904 S.W.2d at 3. Instead, the tenor of Plaintiffs' challenge "is as competitors seeking to avoid competition and not as vindicators of a larger public interest." Querry v. State Hwy. & Transp. Comm'n , 60 S.W.3d 630, 635 (Mo. App. W.D. 2001) (internal quotation omitted). Thus, Plaintiffs did not have standing to bring the action as taxpayers.
Plaintiffs suggest that public policy demands a system of checks and balances; and if they do not have taxpayer standing, no one could challenge the Department's allegedly unlawful action. This argument was rejected in Sommer v. City of St. Louis , 631 S.W.2d 676 (Mo. App. E.D. 1982), where the court observed: " '[o]ur system of government leaves many crucial decisions to the political processes. The assumption that if a given plaintiff has no standing to sue, no one would have standing, is not a reason to find standing.' " Id. at 680 (quoting Schlesinger v. Reservists Comm. to Stop the War , 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706, 722 (1974) ). Thus, though the plaintiffs are correct to note that the Department's actions must be subject to oversight, our legislature has presently restricted the forum of such oversight as well as the identity of those who may challenge the Department's actions. Hence, until such time as the legislature expands its present judicial oversight restrictions relating to the Department's licensing decisions, it is the forum *594 of political process-where the Plaintiffs have historically shown political muscle-to which the content of the licensing arguments of this lawsuit against the Department must be evaluated.
Point I is granted.
Conclusion
The trial court's judgment is reversed and the cause is remanded with directions that the trial court dismiss Plaintiffs' petition for lack of standing.
James Edward Welsh and Gary D. Witt, Judges, concur.

The Department and Tesla also assert that MADA lacked associational standing because none of its members had standing to bring the action.

Because we find the issue of standing dispositive, we need not and do not address the Department's and Tesla's second point.

We note that associations of automobile dealers recently brought suit in New York and Massachusetts to prevent Tesla from operating retail outlets in their states. In both states, the dealers' suits were dismissed for lack of standing. See Mass. State Auto. Dealers Ass'n, Inc. v. Tesla Motors MA, Inc. , 469 Mass. 675, 15 N.E.3d 1152, 1159 (2014) (holding that motor vehicle dealers and their trade association did not have standing to bring their claim that they would be at a disadvantage competing with the defendants who would be selling Tesla brand vehicles through company-owned stores and not through franchised dealerships because that type of competitive injury between unaffiliated entities was not within the area of concern of the statute regulating business practices between franchisors and franchisees); Greater N.Y. Auto. Dealers Ass'n v. Dep't of Motor Vehicles , 40 Misc.3d 875, 969 N.Y.S.2d 721, 726, 727 (Sup. Ct. N.Y. 2013) (holding that automobile dealers association and automobile dealership owners lacked standing to bring suit challenging the issuance of motor vehicle dealer registrations to a Tesla dealer under the Franchised Dealer Act because there was no franchise relationship between the parties, and "[m]anufacturers and dealers cannot utilize the Franchised Dealer Act as a means to sue their competitors").