

# In the Missouri Court of Appeals
## Western District

LO MANAGEMENT, LLC, et al.,  )
Respondents,  )
)    **WD84954**
v.  )    **Consolidated with WD84956**
)
OFFICE OF ADMINISTRATION, et al.,  )    FILED: December 20, 2022
Appellants.  )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### THE HONORABLE COTTON WALKER, JUDGE

### BEFORE DIVISION TWO: LISA WHITE HARDWICK, PRESIDING JUDGE,
### THOMAS N. CHAPMAN, JUDGE AND JANET SUTTON, JUDGE

Office of Administration, Division of Purchasing and Materials Management

("OA") appeals the judgment in favor of LO Management LLC and David Koester

on their petition for declaratory judgment and injunctive relief alleging OA

violated state procurement laws in awarding a license office contract to a

competing vendor.  OA contends the circuit court erred in granting LO

Management and Koester relief on one of their claims because they failed to

exhaust their administrative remedies.  Additionally, OA asserts the court erred in

finding:  (1) OA needed to promulgate a rule before using proximity as one of the

criteria in evaluating bids; (2) OA was required to allow LO Management to submit

additional information to correct and supplement its proposal after the contract was awarded to the competing vendor; (3) OA acted arbitrarily, capriciously, and unlawfully in awarding proximity points and customer service experience points to LO Management; and (4) LO Management and Koester were entitled to attorneys' fees.  For reasons explained herein, we affirm, in part, and reverse, in part.

## FACTUAL AND PROCEDURAL HISTORY

In October 2019, OA issued a request for proposal ("October RFP") to elicit bids to operate the license office in Troy for the Department of Revenue ("DOR").  The October RFP provided that, in evaluating the applications, up to 10 proximity points would be given to vendors whose principal place of business was near the Troy license office.

When the October RFP was issued, the Troy license office was operated by Koester & Koester, LLC, which was owned by Koester and his father.  Before the deadline for submitting proposals to the October RFP, Koester and his uncle formed LO Management for the purpose of submitting a proposal.  LO Management's Articles of Organization, filed with the Secretary of State, identified Koester's home address in O'Fallon as LO Management's business address.

LO Management submitted a proposal in response to the October RFP.  The proposal listed Koester's home address in O'Fallon as LO Management's principal place of business.  The Troy Chamber of Commerce, which had operated the Troy license office prior to Koester & Koester, also submitted a proposal in response to

2

the October RFP.  OA elected not to award the contract to any vendors under the October RFP.

Instead, in May 2020, OA issued a new RFP for operation of the Troy license office ("May RFP").  Proposals were due on June 4, 2020.  Under the May RFP, vendors could earn up to 205 total evaluation points, split between several evaluation criteria and bidding preferences, including up to 24 points for proximity points and up to eight points for customer service experience.  The contract was to be awarded to the vendor with the highest total evaluation score.  Portions of the bids were to be evaluated and scored by OA, while other portions, including the proximity points and customer service experience points, were to be evaluated and scored by a three-person evaluation committee comprised of DOR employees.

Proximity points were based on the distance of the vendor's principal place of business from the current Troy license office as measured by Google Maps.  A principal place of business within five miles of the license office would be given the full 24 points, with fewer points given as the distance increased up to 100 miles, over which no points would be given.

The May RFP defined the vendor's principal place of business as "the bona fide place of business for the contractor as declared by the contractor and indicated in any organizational documents for the contractor's business organization."  It required that a principal place of business:  (1) "Include a permanent, enclosed building or structure owned or leased by the contractor"; (2)

3

"Be actually occupied by the contractor as a place of business"; and (3) "Be located where the public may contact [the] owner or operator of the contractor, or his or her representative, in person or by phone at any reasonable time."

To receive proximity points, the May RFP required the vendor to include documentary proof, such as a deed, mortgage or loan document, lease agreement, or property tax receipt, of its interest in the property located at the address of its principal place of business. The May RFP instructed that the address a vendor listed for its principal place of business had to be a street address and not a post office box. The May RFP further provided that, if the vendor had a business address that it had filed with the Secretary of State's office, it had to use this address as its principal place of business address. If the vendor did not indicate any principal place of business address, it would not receive any proximity points.

Other general terms of the May RFP included a provision advising that it was the vendor's responsibility to ask questions and advise OA if the vendor believed that any language, specifications, or requirements violated any state or federal law or regulations. Any questions or issues regarding the May RFP were to be submitted to an identified "buyer" no later than 10 calendar days prior to the due date of the proposals. In fact, the May RFP emphasized that all questions or comments from vendors regarding the May RFP were to be directed *only* to the buyer:

4

Vendors and their agents (including subcontractors, employees, consultants, or anyone else acting on their behalf) must direct all of their questions or comments regarding the RFP, the evaluation, etc. to the buyer of record indicated on the first page of this RFP. *Vendors and their agents may not contact any other state employee regarding any of these matters during the solicitation and evaluation process. Inappropriate contacts are grounds for suspension and/or exclusion from specific procurements.* Vendors and their agents who have questions regarding this matter should contact the buyer of record.

(Emphasis added.)

The May RFP further provided that OA was "under no obligation to solicit information if it is not included with the proposal." Vendors were warned that "ambiguous responses" may result in an "unfavorable evaluation" of the proposal, but OA "reserve[d] the right to request clarification of any portion of the vendor's response in order to verify the intent of the vendor." The vendor was cautioned that its response "may be subject to acceptance or rejection without further clarification." In evaluating a proposal, OA "reserve[d] the right to consider relevant information and fact, whether gained from a proposal, from a vendor, from vendor's references, or from any other source."

After OA issued the May RFP and increased the number of possible proximity points, LO Management decided to obtain office space in Troy. Through a real estate agent, LO Management rented a unit in the back of a building located at 499 Main Street in Troy. The space had previously been rented to other businesses and was within five miles of the current Troy license office. LO Management's commercial lease agreement stated that the unit was

5

commonly known as 491 West Wood Street, and LO Management's real estate agent told Koester that this was the correct address for the unit. LO Management updated its address with the Secretary of State to reflect 491 West Wood Street as its business address. At the time the commercial lease was drafted, however, the office space did not have an address formally assigned to it by the Lincoln County 911 Mapping and Addressing Department, which is the entity responsible for assigning addresses to properties in Lincoln County. In fact, the address of 491 West Wood Street was assigned on most common mapping systems to a vacant lot several blocks down the street from the office space.

Six vendors, including the Troy Chamber of Commerce and LO Management, submitted proposals in response to the May RFP. In its proposal, submitted on June 3, 2020, LO Management requested proximity points, listing 491 West Wood Street as the address of its principal place of business. LO Management did not include a copy of the commercial lease with its proposal but stated that a copy of the lease was available upon request. LO Management also requested customer service experience points.

Two days after LO Management submitted its proposal, Rachel South, the Executive Director for the Troy Chamber of Commerce, emailed the buyer and the office of OA's Commissioner notifying them that LO Management's principal place of business address was "nothing but a fake address, empty lot at best." South copied her email to several other people, including State Senator Jeanie Riddle; Mary Cotton, Riddle's assistant; and State Representative Randy Pietzman.

6

Riddle's office contacted DOR about the Troy license office and the bidding process.

On August 27, 2020, the DOR evaluation committee authorized OA to award the contract for the Troy license office to LO Management. In scoring LO Management's proposal, the DOR evaluation committee gave LO Management 24 proximity points based on the address of 491 West Wood Street for its principal place of business. The committee gave LO Management zero points for customer service experience. LO Management's overall point total was almost 20 points higher than the point total of the next highest vendor, which was Troy Chamber of Commerce.

The same day that the DOR evaluation committee authorized OA to award the Troy license office contract to LO Management, Riddle began contacting the office of Sarah Steelman, then OA's Commissioner. Steelman's executive assistant sent an email to Steelman on August 27, 2020, advising her, "Sen. Riddle [stated Riddle's cell phone number] called yesterday and today regarding fee office contracts. She said that the contract is supposed to go into effect tomorrow. It is her understanding that it is in OA's court. She would like for you to call her about it. She has thoughts to share." Steelman's office was aware that Riddle was calling about the Troy license office. Steelman talked to Riddle, who expressed concern that LO Management's principal place of business address was a vacant lot.

According to Joseph Plaggenberg, the Director of the Motor Vehicle and Driver Licensing Division, there was no reason for Riddle, or anyone else, to be aware that an award was about to be made, because that information should have been kept confidential until the award was actually made. Furthermore, Plaggenberg believed it was improper for the Troy Chamber of Commerce to be communicating with DOR instead of the buyer, and it was improper for the Troy Chamber of Commerce to use a state official to contact DOR on its behalf.

Nevertheless, in response to Riddle's contact, Steelman suggested to Ken Zeller, then DOR's Director, that the physical address of the bids be checked to ensure the addresses were accurate. DOR checked Google Maps, contacted the Lincoln County Assessor, and sent an employee to 491 West Wood Street. Each confirmed that the address was a vacant lot. DOR did not contact LO Management as part of its investigation. DOR did not check the physical addresses of any of the other proposals submitted for the Troy license office.

Following DOR's investigation into LO Management's address, the DOR evaluation committee completed a new evaluation report. The committee gave LO Management zero proximity points on the basis that the location of its principal place of business "is a vacant lot." The committee also changed LO Management's customer service experience rating to award it one point.

As a result of the revised scoring, the Troy Chamber of Commerce received an overall evaluation score that was 1.5 points higher than LO Management's score. The DOR evaluation committee authorized OA to award the contract to the

8

Troy Chamber of Commerce.  On October 6, 2020, OA awarded the contract to the Troy Chamber of Commerce.

LO Management subsequently filed a bid protest with OA, asserting that it should have received 24 proximity points because its listing of the incorrect address for its principal place of business was "due to an unfortunate misunderstanding, outside LO Management's control."  As an attachment to its bid protest, LO Management submitted the lease on its principal place of business, an affidavit from its realtor explaining that the unit LO Management rented was commonly known to everyone, including the building's owner, as 491 West Wood Street, and a letter from the Lincoln County 911 Mapping and Addressing Department issuing a new address of 195 West Wood Street for the property on October 7, 2020, the day after OA awarded the contract to the Troy Chamber of Commerce.  LO Management also asserted in its bid protest that it should have received more than one point for customer service experience.

OA denied LO Management's bid protest.  OA rejected LO Management's request for more proximity points on the basis that it could not "allow a vendor to supplement their proposal after the scoring with material that was not available to the evaluation committee."  Additionally, OA declined to change LO Management's customer service experience score.

LO Management and Koester subsequently filed a petition for declaratory judgment and injunctive relief in Cole County Circuit Court challenging OA's denial of its protest.  They alleged that OA violated procurement laws by:  refusing

9

to award LO Management any proximity points for the location of its principal place of business (Count I); awarding LO Management fewer customer service experience points than it merited (Count II); and including the proximity points factor in the May RFP because OA did not validly promulgate a rule for awarding location-based points to license office vendors (Count III).

Trial was held in June 2021.  On October 4, 2021, the circuit court ruled in LO Management and Koester's favor on all counts, concluding that OA acted arbitrarily, capriciously, and unlawfully in awarding the contract to the Troy Chamber of Commerce and that the contract award was unlawful and void.  The court permanently enjoined OA from taking any action to implement the contract awarded to the Troy Chamber of Commerce as a result of the May RFP and from awarding any other contract based on the May RFP.  On October 27, 2021, LO Management and Koester filed a motion for attorneys' fees under Section 536.021.9.[1]  The court issued an amended judgment awarding LO Management and Koester $114,013 in attorneys' fees.  OA appeals.

STANDARD OF REVIEW

Section 536.150 governs judicial review of non-contested administrative decisions.  *Mo. Nat. Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 274 (Mo. App. 2000).  In non-contested cases, the circuit court conducts a "de novo review in which it hears evidence on the merits of the case, makes a record, determines

_____

[1] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2019 Cumulative Supplement.

the facts, and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion." *Id.*

On appeal, we review the circuit court's judgment and not the administrative agency's decision. *Id.* Our review of the circuit court's judgment is "essentially the same as the review for a court-tried case" and, therefore, "is governed by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Id.* at 274-75. We will affirm the circuit court's decision unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Tri-Cty. Counseling Servs., Inc. v. Office of Admin.*, 595 S.W.3d 555, 563 (Mo. App. 2020).

### ANALYSIS

In Point I, OA contends the circuit court erred in granting LO Management and Koester relief on their claim in Count III that OA violated state procurement laws by including the proximity points factor in the May RFP without first promulgating a rule for awarding location-based points to license office vendors. OA argues LO Management and Koester failed to exhaust their administrative remedies by not asserting this claim prior to filing their petition in the circuit court.[2]

---

[2] After the petition was filed, OA filed a motion to dismiss Count III on this basis. The court denied the motion.

11

Koester contends he had no administrative remedies to exhaust because he was challenging the award of the Troy license office contract to the Troy Chamber of Commerce in his standing as a taxpayer.  He argues that, because he was merely a taxpayer and not the bidder, he could not have submitted a bid protest raising this claim.

To be entitled to taxpayer standing, "a taxpayer must establish that one of three conditions exists:  (1) a direct expenditure of funds generated through taxation; (2) an increased levy in taxes; or (3) a pecuniary loss attributable to the challenged transaction of a municipality."  *Lee's Summit License, LLC v. Office of Admin.*, 486 S.W.3d 409, 418 (Mo. App. 2016) (quoting *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011)).

Koester asserts he had taxpayer standing under subdivision (1).  The Supreme Court has interpreted "a direct expenditure of funds generated through taxation" to mean "a sum paid out, without any intervening agency or step, of money or other liquid assets that come into existence through the means by which the state obtains revenue required for its activities."  *Manzara*, 343 S.W.3d at 660.  To establish standing under this subdivision, "a Missouri taxpayer needs to show only that his or her taxes went or will go to public funds that have or will be expended due to the challenged action."  *State ex rel. Mo. Auto. Dealers Ass'n v. Mo. Dep't of Revenue & Its Dir.*, 541 S.W.3d 585, 593 (Mo. App. 2017) (citation omitted).

12

"However, not all uses of governmental revenue are 'direct' expenditures under these standards." *Id.* (internal quotation marks and citation omitted). "[G]eneral operating expenses which an agency incurs regardless of the allegedly illegal activity are not direct expenditures, and are insufficient to establish taxpayer standing." *Id.* (internal quotation marks and citation omitted). "Thus, salaries for staff time of [agency] employees, correspondence and telephone calls used to engage in the allegedly unlawful activity are not the type of expenditure of public funds which would give standing, as they are general operating expenses which would be incurred whether or not the challenged transaction took place." *Id.* (citations omitted).

Koester alleged in the petition that he was aggrieved as a taxpayer because, "[i]f the Troy Chamber of Commerce is permitted to proceed with the contract, the State will be obligated to expend State funds generated through taxation in connection with the implementation of the contract." The funds that the State would be obligated to expend to implement the contract to operate a license fee office in Troy would be expended regardless of whether the contract was awarded, allegedly illegally, to the Troy Chamber of Commerce, or whether it was awarded, allegedly legally, to LO Management or to any other vendor. Because the State is obligated to expend funds to operate license offices, this is the type of general operating expense that would be incurred whether or not the challenged transaction of awarding the contract to the Troy Chamber of Commerce took place. *See id.* Thus, Koester has not demonstrated that OA's actions "impacted

13

the direct expenditure of public funds of the nature sufficient to establish taxpayer standing." *Id.* (citation omitted). Where, as in this case, the "tenor" of the plaintiff's challenge "is as [a] competitor seeking to avoid competition and not as [a] vindicator of a larger public interest," the plaintiff does not have standing to bring the action as a taxpayer. *Id.* (internal quotation marks and citation omitted). Koester did not have taxpayer standing to assert the claim in Count III that the inclusion of proximity points as a factor in the May RFP was unlawful because it was not promulgated as a rule. Because Koester did not have standing, the circuit court had no authority to entertain his claim in Count III of the petition.

We turn next to whether the court had the authority to entertain LO Management's claim in Count III by looking at whether LO Management exhausted its administrative remedies prior to asserting this claim.[3] To seek administrative review of a state-awarded contract, 1 CSR § 40-1.050(12) requires that a bid protest "be submitted in writing to the director or designee and received by the division within ten (10) days after the date of the award." The protest must include, among other things, a "[d]etailed statement describing the grounds for the protest." 1 CSR § 40-1.050(12)(D). The director or designee will

---

[3] The parties do not dispute on appeal that LO Management had standing to assert Count III. Bidders have a legally protectable interest in a fair and equal bidding process. *Byrne & Jones Enters., Inc, v. Monroe City R-1 Sch. Dist.,* 493 S.W.3d 847, 854 (Mo. banc 2016). LO Management asserted in its petition that the unlawful inclusion of proximity points as a factor deprived it of a fair opportunity to compete in the bidding process. "[B]id documents which require bidders to strategically structure bids or offers to receive scores in several categories do not present a 'fair opportunity' to all bidders if one of the scored categories is an unlawful component of the procurement process." *Lee's Summit License*, 486 S.W.3d at 417.

14

review the protest and "will only issue a determination on the issues asserted in the protest." 1 CSR § 40-1.050(12).

If the protesting party disagrees with the director or designee's decision, then Section 536.150.1 provides for judicial review of the decision. "Because section 536.150.1 provides a right to judicial review when an agency decision is 'not subject to administrative review,' it requires that a party exhaust its administrative remedies prior to seeking judicial review in non-contested cases." *Tri-Cty. Counseling*, 595 S.W.3d at 568 (quoting *State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 472 (Mo. banc 2018)).

The purpose for requiring the exhaustion of administrative remedies is to preserve "the efficiency in the relationships between agencies and the courts." *Id.* (citation omitted). The exhaustion requirement recognizes the agency's ability not only to develop a factual record, but also to address issues within its purview and expertise:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Boot Heel Nursing Ctr., Inc. v. Mo. Dep't of Soc. Servs.*, 826 S.W.2d 14, 16 (Mo. App. 1992).

LO Management acknowledges that it did not assert in its bid protest that the inclusion of proximity points was unlawful because it was not promulgated as

15

a rule but argues it was not required to do so because the issue was merely an additional "legal argument" or "legal theory." We disagree. In its bid protest, LO Management argued it was entitled to the full 24 proximity points under the May RFP. Thus, while the bid protest challenged the number of proximity points LO Management was awarded under the May RFP, Count III challenged the lawfulness of the inclusion of proximity points as a factor in the first place and, consequently, the validity of the May RFP. This was not simply an additional "legal argument" or "legal theory" to support the grounds asserted in the bid protest; it was an entirely new ground for challenging the award.

Nevertheless, LO Management insists that its claim in Count III falls under an exception to the exhaustion requirement. Exhaustion of administrative remedies is not required when an issue "poses no factual questions or issues requiring the special expertise within the scope of the administrative agency's responsibility, but instead proffers only questions of law clearly within the realm of the courts." *Premium Std. Farms, Inc. v. Lincoln Twp. of Putnam Cty.*, 946 S.W.2d 234, 238 (Mo. banc 1997) (citation omitted). "A failure to exhaust administrative remedies may be justified when the only or controlling question is one of law, at least where there is no issue essentially administrative, involving agency expertise and discretion, which is in its nature peculiarly administrative." *Id.* (citations omitted). LO Management argues that whether the inclusion of the proximity points factor in the May RFP was unlawful because it was not

16

promulgated as a rule was a purely legal issue that needed no factual development or OA's specialized expertise.  We disagree.

LO Management's claim in Count III did not present a purely legal issue outside the realm of OA's responsibility and expertise.  The legislature provides the commissioner of administration the authority to make rules concerning procurements:

> The commissioner of administration shall make and adopt such rules and regulations, not contrary to the provisions of this chapter, for the purchase of supplies and prescribing the purchasing policy of the state as may be necessary.  No rule or portion of a rule promulgated under the authority of this chapter shall become effective unless it has been promulgated pursuant to the provisions of section 536.024.

§ 34.050.  The legislature's use of the phrase "as may be necessary" indicates that the commissioner of administration has discretion to determine when to make and adopt rules.

This is consistent with Section 536.041, which allows for persons to file a petition with any administrative agency requesting the adoption of a rule.  Section 536.041 provides that, after such a petition is filed, the decision as to whether to the proposed rule should be adopted is to be made by the agency.   Along with its decision, the agency is required to submit a "concise summary of the state agency's specific facts and findings with respect to the criteria in Section 536.175.4."  The criteria in Section 536.175.4 are:

> (1) Whether the rule continues to be necessary, taking into consideration the purpose, scope, and intent of the statute under which the rule was adopted;

17

(2) Whether the rule is obsolete, taking into consideration the length of time since the rule was modified and the degree to which technology, economic conditions, or other relevant factors have changed in the subject area affected by the rule;

(3) Whether the rule overlaps, duplicates, or conflicts with other state rules, and to the extent feasible, with federal and local governmental rules;

(4) Whether a less restrictive, more narrowly tailored, or alternative rule could adequately protect the public or accomplish the same statutory purpose;

(5) Whether the rule needs amendment or rescission to reduce regulatory burdens on individuals, businesses, or political subdivisions or eliminate unnecessary paperwork;

(6) Whether the rule incorporates a text or other material by reference and, if so, whether the text or other material incorporated by reference meets the requirements of section 536.031;

(7) For rules that affect small business, the specific public purpose or interest for adopting the rules and any other reasons to justify its continued existence; and

(8) The nature of the comments received by the agency under subsection 2 of this section, a summary of which shall be attached to the report as an appendix and shall include the agency's responses thereto.

Section 536.041 further provides for the joint committee on administrative rules and the commissioner of administration to be involved in this process.

These statutes indicate that the legislature has vested the responsibility of making the initial determination as to whether a rule needs to be promulgated with OA and prescribed the administrative procedure for doing so. LO Management's attempt to take this decision away from OA and bypass the administrative procedure entirely by seeking relief first from the court prematurely

interferes with agency processes, deprives OA of an opportunity to correct its own errors if it were to determine that promulgating a rule was required, and deprives the parties and the courts of the benefit of OA's experience and expertise in applying the criteria set forth in Section 536.175.4 in making its decision. LO Management was required to exhaust its administrative remedies on its claim that OA violated state procurement laws by including the proximity points factor in the May RFP without first promulgating a rule for awarding location-based points to license office vendors. Point I is granted.

Because Koester lacked standing to assert the claim in Count III and LO Management failed to exhaust its administrative remedies with regard to this claim, the court had no authority to entertain Count III of the petition. Therefore, the judgment in favor of LO Management and Koester on Count III is reversed. We deny as moot Point II, in which OA challenges the merits of the court's award in favor of LO Management and Koester on Count III. Lastly, because the court was without the authority to entertain Count III of the petition, and the judgment of $114,013 in attorneys' fees was premised entirely on the court's finding in favor of LO Management and Koester on Count III,[4] we reverse the attorneys' fees

---

[4] The court awarded attorneys' fees under Section 536.021.9, which provides, in pertinent part:
> If it is found in a contested case by an administrative or judicial fact finder that a state agency's action was based upon a statement of general applicability which should have been adopted as a rule, as required by sections 536.010 to 536.050, and that agency was put on notice in writing of such deficiency prior to the administrative or judicial hearing on such matter, then the administrative or judicial fact finder shall award the prevailing nonstate agency party its reasonable attorney's fees incurred prior to the award, not to exceed the amount in controversy in the original action.

award in favor of LO Management and Koester. In light of this reversal, we need not further address Point V, in which OA challenges the merits of the court's award of attorneys' fees in favor of LO Management and Koester.

In Points III and IV, OA challenges the court's conclusion that it acted arbitrarily, capriciously, and unlawfully in awarding proximity points and customer service experience points to LO Management. An agency acts arbitrarily if there is no rational basis for its decision. *Mo. Nat. Educ. Ass'n*, 34 S.W.3d at 281. "Capriciousness concerns whether the agency's action was whimsical, impulsive, or unpredictable." *Id*. "An agency must not act in a totally subjective manner without any guidelines or criteria." *Id*.

Looking first at the proximity points award, the court concluded that OA's "handling of the entire series of events that resulted in DOR taking the proximity points away from LO Management was arbitrary and capricious." In particular, the court noted that DOR's usual practice of evaluating proximity points by simply inserting the listed address into Google Maps to determine the distance would have resulted in LO Management's receiving the full 24 proximity points. The court found that OA's decision to deviate from that practice based on communication on behalf of and from a competing vendor was arbitrary. The court further found "no rhyme or reason" for OA's approach to the address issue, because instead of choosing to investigate all vendors' addresses, OA singled out one vendor, LO Management, "against whom vendor, Troy Chamber, engaged in improper communication." Specifically, the court explained that OA permitted

20

the Troy Chamber of Commerce to violate, without repercussion, the May RFP's rules, but OA did not give LO Management the opportunity to clarify whether its principal place of business was truly a vacant lot. The court found that seeking this clarification from LO Management "would have been the most reasonable response—it is absurd to believe a vendor would intentionally list a vacant lot as its address in both its proposal and with the Secretary of State." The court concluded, "These disparate approaches resulted in LO Management being treated unfairly." Substantial evidence supports these findings.

OA argues, however, that it was not allowed to contact LO Management to clarify its principal place of business address because *State ex rel. Stricker v. Hanson*, 858 S.W.2d 771 (Mo. App. 1993), does not allow vendors to supplement their proposals after the close of the bid process. In *Stricker*, a vendor submitted a bid that failed to include information necessary for its bid to even be considered. *Id*. at 772-76. After all of the other bids were submitted, and the vendor knew it had been deemed the lowest bidder, OA allowed the vendor to supply the missing information. *Id*. We found that the vendor's initial bid was non-responsive, in that it contained a material variance from the awarding authority's specifications. *Id*. at 776. We further found that the non-responsive initial bid should have been rejected because "a bid which contains a material variance may not be corrected after the bids have been opened in order to make it responsive." *Id*. As OA's consideration of the corrected bid afforded the vendor "a substantial advantage or

21

benefit not enjoyed by the other bidders," we held that the award of the contract to that vendor was unlawful. *Id.* at 777-78.

Stricker is inapposite. The OA's Director of the Division of Purchasing testified that there was not a responsiveness issue with LO Management's bid. The circuit court found that LO Management actually leased an office space that qualified under the May RFP as a principal place of business within five miles of the license office in Troy. The court further found that this office space did not have an address formally assigned to it by the Lincoln County 911 Mapping and Addressing Department when LO Management submitted its bid and that the only address for the office space was its "commonly known address" of 491 West Wood Street. Asking LO Management to clarify its principal place of business address under these circumstances is not comparable to allowing the bidder in Stricker to supply a material term that it had previously left blank in its initial bid. The May RFP expressly provided that OA "reserve[d] the right to request clarification of any portion of the vendor's response in order to verify the intent of the vendor." If OA believed *Stricker* precluded it from seeking clarification from vendors, it should not have included this provision in the May RFP.

While the May RFP may not have required OA to seek clarification on LO Management's principal place of business address, it did not preclude OA from doing so, and OA should have sought clarification under the circumstances. OA allowed a competing bidder, the Troy Chamber of Commerce, to have inappropriate contacts with state employees—a ground for suspension and/or

22

exclusion from specific procurements under the May RFP—and then used the information gleaned from those inappropriate contacts to award LO Management zero proximity points without giving LO Management the opportunity to clarify its intent in listing that address. There was no rational basis for OA's actions, which appear to have been entirely subjective and unpredictable. The circuit court did not err in finding that OA acted arbitrarily, capriciously, and unlawfully in awarding proximity points to LO Management.[5] The portion of Point III alleging error in the court's judgment regarding the proximity points award is denied.

Because we are affirming the circuit court's determination that OA acted arbitrarily, capriciously, and unlawfully in awarding proximity points to LO Management, we find, pursuant to Section 34.150,[6] that the court correctly declared that the contract awarded to the Troy Chamber of Commerce was void on this basis. Therefore, there is no need for us to address, and we deny as moot, the remaining portion of Point III and the entirety of Point IV, both of which allege error in the court's determination that OA acted unlawfully in awarding customer service experience points to LO Management.

---

[5] OA argues that its decision to award LO Management zero proximity points could also be supported by LO Management's failure to follow the May RFP's instructions to provide a copy of the lease agreement or other documentation for its principal place of business with its bid. While OA could have denied LO Management proximity points on this basis, the evidence shows that it did not. Moreover, OA awarded a competing bidder who also did not provide any documentation for its principal place of business 22 proximity points, so denying LO Management proximity points on this basis would have been arbitrary and capricious.

[6] Section 34.150 states, in pertinent part, "Whenever any department or agency of the state government shall purchase or contract for any supplies, materials, equipment or contractual services contrary to the provisions of this chapter or the rules and regulations made thereunder, such order or contract shall be void and of no effect."

23

## CONCLUSION

The court's ruling in favor of LO Management and Koester on their claim in Count III of their petition that OA's inclusion of proximity points in the May RFP was unlawful because it was not promulgated as a rule is reversed. The award of attorneys' fees to LO Management and Koester is reversed. The court's declaration that the license office contract awarded to the Troy Chamber of Commerce was void because OA acted arbitrarily, capriciously, and unlawfully in awarding proximity points to LO Management is affirmed.

LISA WHITE HARDWICK, JUDGE

All Concur.

24